This is an appeal from the denial of the petition of David J. Geller and Lenora Geller for the adoption of Baby Boy Schroetter, a minor, and an order for the removal of the minor from the home of petitioners and commitment of the child to the Los Angeles County Department of Adoptions (formerly known as the Los Angeles County Bureau of Adoptions) purportedly pursuant to section 226c of the Civil Code. The order of custody of the minor required that the child be removed from the home of the petitioners and delivered to the Los Angeles County Bureau of Adoptions pursuant to Civil Code, section 226c The court found that "there is a situation in the home which is not in the best interest of the subject minor" and concluded that "the petitioners are not suitable for this minor child." Motion for new trial was heard and denied.[1]
The action below was based on the petition of David J. Geller and Lenora Geller to adopt a minor child by an independent petition for adoption rather than an agency or step-parent adoption. The natural mother signed a consent for adoption by the petitioners. Dr. Simon Conrad testified on behalf of petitioners and the Los Angeles County Department of Adoptions presented medical evidence by way of a report by John Paul Walters, M.D. Dr. Walters' report was entered into evidence by stipulation between counsel. The bureau also relied on two reports of that agency which were submitted to the court. The initial report entitled "Conditional Approval Recommended" was dated January 24, 1966, and the second report was entitled "Supplemental Report Denial Recommended," was dated April 28, 1966.
Petitioners assert that the decision was unsupported by the evidence, that the decision of the trial court was based on bias and the court abused its discretion, that the trial court denied petitioners due process in refusing to permit them to cross-examine Dr. John Paul Walters, and finally, that the trial *Page 368 
court acted outside its jurisdiction in committing the child to the Los Angeles County Bureau of Adoptions.[2]
 I [1a] The decision was supported by the evidence. [2] When a verdict is attacked as being unsupported by the evidence, the power of the appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, that will support the conclusion. (Crawford v. Southern Pac. Co. (1935) 3 Cal.2d 427
[45 P.2d 183].) [1b] Dr. Walters' report to the county bureau of adoptions stated that, at the time of her examination, Mrs. Geller exhibited the same reactions which she exhibited in the past. Dr. Walters stated that she was "apprehensive, defensive, guarded," and attempted to present herself in the best possible light. Dr. Walters' report indicated that Mrs. Geller had been previously depressed, that she had previously had an intestinal illness, that her basic problem was a conflict between spontaneity and a fantasy "right way to do things," that she has little or no self image, and that she seeks a "non-existent perfectionism." Dr. Walters concluded that Mrs. Geller has a "long standing passive-aggressive character disorder and will undoubtedly develop psychiatric symptoms in the future and be in need of psychiatric care." Dr. Walters also reported that Mr. Geller had feelings of inferiority and that "one would definitely have reservations about the psychological well-being of a child brought up by parents who have such poor opinions of themselves." Dr. Walters added that "neither of these people present a gravity of psychiatric disturbance at the present time which would definitely preclude their functioning as adoptive parents."
Dr. Conrad, Mrs. Geller's own psychiatrist, testified that in 1961 Mrs. Geller had come to him for treatment for depression on about 15 occasions, and again in 1962, at which time there were 20 or 25 visits. She had previously seen other agencies in Chicago for emotional problems. Dr. Conrad also testified that everybody has anxieties and depressions and that depressive *Page 369 
reactions are as common as tonsilitis. Dr. Conrad stated that to conclude that someone with an inferiority complex makes a poor parent is "farfetched"; that people with inferiority complexes become judges, lawyers, doctors and accountants; and that the Gellers were simple, ordinary people who were as suitable as anybody he had ever seen to have a child. However, this latter testimony merely created conflicts in the evidence or conflicting inferences from the evidence, that must be resolved by the trial court.
 II [3] Petitioners claim the court was biased against people who have in the past obtained treatment for emotional problems. We find no evidence of bias or prejudice. The trial court received all the evidence, (including Dr. Walters' prognosis that Mrs. Geller's problems are likely to reoccur in the future) and concluded therefrom that denial of the adoption was in the best interests of the child. In Adoption of Richardson (1967)251 Cal.App.2d 222, 232 [59 Cal.Rptr. 323], the trial judge indicated his bias against deaf mutes by writing to the adoption bureau director before the hearing that "this adoption should be nipped in the bud." We have no comparable situation before this court. In Richardson, the trial judge had evidenced a strong bias against any adoption by any person suffering from the physical defects of the adopting parents therein involved. Those physical defects, while entitled to be considered, were clearly not determinative of fitness. In the case at bench, the trial judge indicated no more than that he was concerned over a factor — mental illness — which is clearly of vital importance, and he also gave clear indication that he weighed that factor with all of the other evidence in the case. Counsel argues that the judge was irrevocably biased against all prospective adopting parents who had had psychiatric treatment in the past. The record does not support such a charge. It is clear that the decision adverse to petitioners was based on the evidence that Mrs. Geller's condition was a recurrent one and that, although she was mentally stable at the time of trial, there was strong probability that she would be in need of psychiatric care in the future. This was a factor which the trial court was obligated to consider. We cannot say that it was wrong in refusing to initiate a legal family relationship in the face of the probability of the adoptive mother suffering from psychiatric disorders in the future.[3] It is this *Page 370 
element of prognosis which distinguishes the present case fromAdoption of Lingol (1951) 107 Cal.App.2d 457 [237 P.2d 57], where the only psychiatric problem had been 12 years earlier, with no indication of the possibility of a recurrence.
 III [4] Petitioners assert that the trial court denied them due process by refusing to allow them to cross-examine Dr. Walters. The record does not support the contention. Petitioners' trial counsel stipulated that Dr. Walters' report could be received into evidence. Had petitioners desired to cross-examine the doctor, they could have refused the stipulation and insisted on the agency producing him in court. They elected not to do so. The unavailability of Dr. Walters was due to their tactical decision, not to any restriction imposed by the trial court.
In addition, the trial court, after trial counsel for petitioner had called the three witnesses that he had indicated he wished to call, specifically asked the attorney if he had any further witnesses; the attorney said no.[4] Had the petitioners desired to examine Dr. Walters, they had this further opportunity to make their wishes known; they did not.
 IV [5] Petitioners' final contention is that the trial court acted outside its jurisdiction in committing the child to the Los Angeles County Bureau of Adoptions after denying the adoption of the child. There is some language in Adoption of Richardson,supra (1967) 251 Cal.App.2d 222, 238 [59 Cal.Rptr. 323], lending support to this view. The Richardson case held that the judge exceeded his jurisdiction in placing the child with the bureau of adoptions after denying a petition to adopt, stating in part: "This case is not an agency adoption matter, but, to the contrary, it is a direct placement by a *Page 371 
parent of the child into the home of petitioners with full knowledge of the facts." However, the above quoted language appears to be only dicta in the case. The court's holding inRichardson that the child was improperly committed to the Los Angeles County Bureau of Adoptions appears to be based on the language of section 226c of the Civil Code, which reads in part: "At the hearing, if the court sustains the recommendation that the child be removed from the home of petitioners because the agency has recommended denial or the petitioners desire to withdraw the petition or the court dismisses the petition and does not return him to his parents, the court shall commit the child to the care of the State Department of Social Welfare or the licensed county adoption agency, whichever agency made the recommendation, for that agency to arrange adoptive placement or to make a suitable plan."
In the Richardson case the lower court acted improperly in committing the child to the Los Angeles County Bureau of Adoptions because the agency did not recommend denial, the petitioners did not desire to withdraw the petition, and the court did not dismiss the petition. In the case at bench the agency has recommended denial of the adoption, and therefore, under the express language of Civil Code 226c, "the court shall commit the child to the care of the State Department of Social Welfare or the licensed county adoption agency, whichever agency made the recommendation, . . ." Contrary, thus, to the situation in Richardson, the order herein made is within the literal provisions of the statute.
We recognize the fact that, in an agency adoption, the natural parent has released the child to the agency and that the agency and not the natural parent is the legal custodian, whereas, in a direct adoption, the legal custody remains in the natural parent unless and until the adoption is granted. This difference may give to the natural parent a right to demand that the agency turn the child over to her, subject to the institution of proceedings under section 600 of the Welfare and Institutions Code. But if that is the case (and we intend no determination of such an issue) it is not a matter which these petitioners may raise. Their physical (not legal) custody of the child was only as an incident to the proposed adoption. Once that objective was denied them, they have no further legal claim to the custody of the child, and they cannot object to the placement with the agency.
The orders are affirmed.
Files, P.J., and Jefferson, J., concurred.
[1] The Notice of Appeal is from "the judgment made and entered . . . on August 8, 1966." The orders were actually made on May 17, 1966; thereafter, on July 6, 1966, petitioners filed their Notice of Intention to Move for a New Trial; that motion was denied on August 8, 1966. Since the record does not show that any notice of entry of the order of May 17th was ever given, either by the clerk or by anyone else, both the new trial notice and the notice of appeal were in time. Pursuant to rule 1(a) of the California Rules of Court, we treat the notice as relating to the only appealable orders — those of May 17th.
[2] In their reply brief, appellants raise, for the first time, the denial of their motion for a new trial. It is well settled that we need not consider on appeal new issues introduced for the first time in the reply brief. (3 Witkin, Cal. Procedure (1954) Appeal, § 155, pp. 2341-2342.) Insofar as that motion dealt with alleged errors occurring at the trial, we have considered, in the discussion that follows, all errors raised in the opening brief. Insofar as that motion rested on allegedly newly discovered evidence, we note that there was no showing of any of the requirements for granting a new trial on that ground.
[3] The purpose of adoption proceedings is to promote the welfare of the child (Adoption of Barnett (1960) 54 Cal.2d 370
[6 Cal.Rptr. 562, 354 P.2d 18]); it is not to satisfy the desires of the proposed adoptive parents. In determining the best interests of the child, the trial court has a wide discretion and its decision cannot be overturned by an appellate court in the absence of a clear abuse of discretion. (Adoption of Thevenin
(1961) 189 Cal.App.2d 245, 251 [11 Cal.Rptr. 219].)
[4] The testimonial proceedings concluded as follows:
"MR. GOTTLIEB [Petitioners' counsel]: I believe that is all, your Honor.
"MR. PARRISH [Counsel for the agency]: Nothing further, your Honor.
"THE COURT: Any further witnesses, Mr. Gottlieb?
"MR. GOTTLIEB: No.
"THE COURT: You indicated you have no questions?
"MR. PARRISH: No questions."
Counsel then proceeded to their arguments and the court's decision, from the bench, followed. *Page 372