[Civ. No. 9381.   Fourth Dist., Div. One.   Feb. 17, 1969.]

Adoption of BABY BOY DRISCOLL, a Minor. CHARLES
H. THOMPSON et al., Plaintiffs and Appellants, v.
DEPARTMENT OF SOCIAL WELFARE, Defendant
and Respondent.

Silverton & Silverton and Max Abrams for Plaintiffs and
Appellants.

Thomas C. Lynch, Attorney General, and William L. Zessar,
Deputy Attorney General, for Defendant and Respondent.

BROWN (Gerald), P. J.—Charles H. Thompson and Eliza-
beth S. Thompson appeal from a judgment denying their peti-

tion to independently adopt the infant boy Driscoll and ordering the Orange County Welfare Department, as agent of the State Department of Social Welfare, to take custody of the child for further placement.

In December 1966 when he was a little over a month old, the boy, named Robert by the Thompsons, was released to them from the hospital of his birth. Robert has been with the Thompsons ever since, the trial court having stayed execution of its judgment pending appeal.

The Thompsons' adoption petition was filed February 16, 1967, when Mr. Thompson was aged 61 and Mrs. Thompson 58. Some difficulty followed concerning obtaining a consent to the adoption from Robert's natural mother. Respondent State Department of Social Welfare contends this court must resolve whether the natural mother's consent was free, voluntary and knowledgeable. The Department accepted the consent and the court below, by its ruling, necessarily ruled the consent was sufficient. This is so because the court did not return the child to his natural mother as would have been mandatory had the court found no consent. (Civ. Code, § 226b.) While there are conflicting inferences, the court's finding the consent was sufficient is supported by substantial evidence and inferences reasonably drawn from that evidence.

On August 16, 1967, the State Department of Social Welfare filed its report stating it appeared to be to the best interests of Robert the adoption be completed. The Department, however, "reluctantly" recommended the petition be granted.

On its own motion the court set a hearing to take testimony on the Department's report. The reluctance of the Department stemmed from the age disparity between Robert and the Thompsons. A medical report, in evidence by stipulation, states Mr. Thompson has for several years had cerebral arteriosclerosis and in 1957 he suffered a cerebral thrombosis. He rapidly and completely recovered from all of the effects of the cerebral thrombosis with no residual factors or disability.

Other than age and related health factors the Department's investigation of the Thompsons' home is generally favorable. Robert is very well taken care of, he is very much a part of the home and all members of the household are interested in him and his well being. The Thompsons have three adult children ranging in age from 19 to 41, two of whom are adopted. Mary Ellen the 19-year-old lives at home. The younger of two married sons, Laieton, 23, and his wife have

agreed in writing to care for Robert should the Thompsons become unable to do so.

The Thompsons ask this court to rule it an abuse of discretion to deny an adoption based on age alone. The advanced age of adoptive parents is a disadvantage to be considered in determining if the interest of the child would be promoted by the adoption. (*Adoption of Martin,* 76 Cal.App. 2d 133, 136 [172 P.2d 552].) On the other end of the scale our Legislature has recognized the importance of the age factor by requiring adoptive parents to be 10 years older than the person adopted. (Civ. Code, § 222.) We cannot say, as a matter of law, the trial court abused its discretion based upon the health and age considerations and testimony of problems which may become involved because of the age disparity between Robert and the Thompsons.

We find, however, the court exercised its discretion under a mistaken understanding of the alternatives open to it. Because decision making, hence discretion, is largely a process of choosing alternatives, a mistake as to the alternatives open to the court affects the very foundation of the decisional process. ". . . all exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies and appropriate to the particular matter at issue." (*People* v. *Russel,* 69 Cal.2d 187, 194-195 [70 Cal.Rptr. 210, 443 P.2d 794].)

The court below assumed it had the power to deny the Thompsons' petition and, as it did, place Robert with the Orange County Department of Public Welfare for further adoptive placement.

The procedure for adoptions, unknown at common law, is entirely statutory. (*Adoption of McDonald,* 43 Cal.2d 447, 452 [274 P.2d 860].) Where, as here, the Department recommends approval of an independent adoption petition and the court denies it notwithstanding the Department's recommendation, the child must be returned to his natural parent or parents. (*Adoption of Richardson,* 251 Cal.App.2d 222, 238-239 [59 Cal.Rptr. 323].) The power to turn a child over to the Welfare Department for further placement is limited by California Civil Code, section 226c, which provides in part: "At the hearing, if the court sustains the recommendation that the child be removed from the home of petitioners because the agency has recommended denial or the petitioners desire to withdraw the petition or the court dismisses the petition and does not return him to his parents, the court shall commit the

child to the care of the State Department of Social Welfare or the licensed county adoption agency, whichever agency made the recommendation, for that agency to arrange adoptive placement or to make a suitable plan.''

Here the court did not dismiss the petition nor could it have dismissed it. Under the statutes the court may dismiss where it approves a withdrawal of consent by the natural parent (Civ. Code, § 226a) or where the petitioners wish to dismiss (Civ. Code, § 226b). Where the natural parent refuses to consent or the basis for a dismissal is withdrawal of consent by the natural parent, the court must restore the child to his natural parent (Civ. Code, § 226b).

The key to the court's dispositional power and alternatives lies in the consent of the natural parent or parents. Where the State Department of Social Welfare recommends the petition be denied on the ground petitioners' home is unsuitable, consents cannot be obtained or petitioners desire to withdraw their petition, a hearing must be set and *notice is given to the natural parents* (Civ. Code, § 226.8). It is in these situations Civil Code, section 226c authorizes the court to commit the child to the Department or its agent upon a denial of the petition. Having had notice, the natural parents impliedly consent to the procedure authorized by section 226c where they fail to appear or object.

Where, however, the Department recommends approval of the adoption petition, no provision is made for notice to the natural parents. Under these circumstances the court cannot infer an implied consent the child be committed to the state agency for placement should the court deny the petition.

In an independent adoption the legal custody of the child remains in the natural parent unless and until the adoption is granted, as contrasted to an agency adoption where legal custody has been relinquished to the agency (*Adoption of Schroetter,* 261 Cal.App.2d 365, 370 [67 Cal.Rptr. 819]). *Schroetter* suggests, by dictum, adoption petitioners would have no standing to complain of an unauthorized order committing the adoptive child to the state agency as only the natural parents may raise the issue.

Other than as provided by statutory exceptions, consent of the natural parent or parents is a jurisdictional prerequisite to adoption. (*Adoption of Barnett,* 54 Cal.2d 370, 377 [6 Cal.Rptr. 562, 354 P.2d 18].) It is not in the best interest of the child to follow procedures which would result in a further adoption placement the natural parents could attack on jurisdictional grounds.

The Attorney General correctly states in his brief: "In an independent adoption such as the one at bar the natural parent *must consent to the adoption by specific adoptive parents*. The names of the adoptive parents appear on the Consent to Adoption form which the natural parent signs. This is in contrast to an agency adoption where the child is relinquished by its parent to the agency. In the latter case, the parent does not know the names of the adoptive parents nor does the parent have the right to refuse specific adoptive parents. Civ. Code §§ 226, 226.1, 226.2, 226a, 224(m) and 224(n) ; 2 Cal.Jur.2d, *Adoption of Children*, p. 427."

The natural parent here consented only to an adoption by the Thompsons. She neither expressly nor impliedly consented to the state agency placing her child for adoption with any other persons. The court may either grant the petition as recommended by the Department or return the child to his natural mother. The Thompsons are entitled to an exercise of discretion by a court fully aware of its choice between these legal alternatives.

The judgment is reversed and the cause remanded for further proceedings consistent with the views expressed in this opinion.

Coughlin, J., and Whelan, J., concurred.