[Civ. No. 15499. Fourth Dist., Div. Two. Jan. 24, 1977.]

Guardianship of BABY BOY M., a Minor.
PAUL FRANCIS LAVALLEE et al., Petitioners and Appellants, v.
DANIEL WARREN DUNN et al., Petitioners and Respondents.

Adoption of BABY BOY M., a Minor.
PAUL FRANCIS LAVALLEE et al., Plaintiffs and Appellants, v.
DANIEL WARREN DUNN et al., Defendants and Respondents.

## Counsel

Miller, MacDonald & Bush, William M. Bush, Dalton & Mordock and John C. Mordock for Petitioners and Appellants and for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, N. Eugene Hill, Assistant Attorney General, Ronald V. Thunen, Jr., and Anne S. Pressman, Deputy Attorneys General, as Amici Curiae on behalf of Petitioners and Appellants and Plaintiffs and Appellants.

Roger K. Patterson for Petitioners and Respondents and for Defendants and Respondents.

---

**OPINION**

**TAMURA, J.**—Appellants Paul and Carol Lavallee appeal from a judgment dismissing their petition (1) for the adoption of Baby Boy M.; (2) for appointment as his guardian; (3) for a decree declaring the child free from custody and control of his natural parents; and (4) for forfeiture of the natural parents' right to be appointed guardians of the child.

The subject of these proceedings is a baby boy (hereafter referred to as M.) born out of wedlock to Patricia Jean Maycock. The father of M. is Daniel Warren Dunn. The child was born on August 14, 1974, and the parents subsequently celebrated their marriage on February 8, 1975.

On June 4, 1974, Patricia and her mother met with Mr. Dalton, the Lavallees' attorney, to discuss whether Patricia was inclined to let her unborn child out for adoption. The conference led to a meeting between Patricia and the Lavallees where adoption and the Lavallees' suitability as parents were discussed. Patricia, apparently content, made arrangements for the Lavallees to take the newborn infant home from the hospital. M. lived with the Lavallees from the time of his birth until October 3, 1975, when he was, by order of court, restored to the physical custody of his natural parents.

The procedural history which culminated in this appeal may be summarized as follows: On August 27, 1974 (13 days after M.'s birth), the Lavallees instituted adoption proceedings in Orange County Superior Court. The referral letter was received by Mrs. Stolba, the adoption worker, on December 9, 1974. After several abortive attempts to reach Patricia, Mrs. Stolba finally met with her on January 13, 1975. After discussion of the adoption and the legal effects of subscribing to the "consent to adoption," Patricia executed the consent in the presence of Mrs. Stolba and two witnesses.

Prior to his marriage to Patricia, Daniel knew that he had fathered a child but had been advised by Patricia that M. had been born and placed for adoption in Seattle, Washington. However, sometime in January

1975, Patricia related to Daniel the true circumstances of M.'s birth and further informed him that he would have to give written consent if the adoption were to proceed. Daniel met with Mrs. Stolba in March 1975 and informed her that he would first have to confer with leaders of his church before deciding whether to assent to the adoption. Approximately a week later Daniel advised Mrs. Stolba that he would not consent.

The Lavallees responded on March 28, 1975, by filing a petition to be appointed as guardians of M. On April 23, 1975, the Dunns similarly petitioned to be appointed guardian of M. and further moved the court for permission to withdraw Patricia's consent to adoption. On May 6, 1975, the Lavallees filed a motion for determination that the Dunns had forfeited their right to be appointed guardians of M., the basis of the motion being the allegation that the Dunns had abandoned their baby boy.

Pursuant to stipulation of counsel, the trial court consolidated the adoption proceedings with the other petitions and ordered the Probation Department of Orange County to undertake an investigation and file a written report on the guardianship petition.[1] The report, which was transmitted to the court on July 15, 1975, recommended that the Lavallees assume the guardianship. On August 4, 1975, the adoption report compiled by the State Department of Health was lodged with the court; it recommended that the best interests of M. would be served by denying Patricia's petition for withdrawal of her consent to the adoption.

On August 15, 1975, the Lavallees filed a petition for a decree declaring the child free from parental custody and control on the ground of abandonment. The county probation report on that petition (stamped filed Sept. 24, 1975, but read and considered by the judge on Sept. 19, 1975) recommended that the "child be declared an abandoned child and freed from the custody and control of his father" and that the "minor shall be permitted to remain in the home of" the Lavallees pending further order of court.

After trial on the sundry petitions and consideration of the various reports, the court, in the presence of counsel for all parties, orally

---

[1]Section 1443 of the Probate Code provides as follows:

"The probation officer in the county in which the petition for appointment of guardian of a minor or incompetent person is pending, shall make an investigation of each case whenever he is requested to do so by a judge of the superior court. . . ."

announced its decision to grant the Dunns' petition to withdraw Patricia's consent to the adoption, to deny the Lavallees' petition for adoption, and to dismiss the remaining petitions on the ground the issues posed by them had become moot by the court's initial ruling. The court ordered the child to be delivered forthwith to the Dunns and directed counsel for the Dunns to prepare the order. The Lavallees requested findings of fact and conclusions of law but the request was denied on the ground the matter was a special proceeding not requiring findings. Thereafter the Lavallees moved for reconsideration and modification of the court's order requiring the immediate transfer of the physical custody of M. to the Dunns but the court declined to alter its rulings.[2] Judgment was entered in accordance with the court's intended decision.

The Lavallees assail the judgment on numerous fronts: They contend: (1) The trial court improperly refused to make findings of fact and conclusions of law; (2) the trial court erred in overruling the Attorney General's motion for judgment on the pleadings; (3) the court's dismissal of the various petitions on the grounds of mootness was in error; (4) the court's decision was improperly motivated and, therefore, subject to reversal; and (5) the trial court improperly restricted appellants' right to summation. In the ensuing discussion, we analyze each proffer of error seriatim and conclude that the attacks upon the judgment must fail.

## I

Section 632 of the Code of Civil Procedure instructs the court to render written findings after the trial of a question of fact if a party timely requests. ■ Section 632 is inapplicable, however, to hearings denominated "special proceedings" (Code Civ. Proc., § 23) such as petitions for adoptions, appointment of guardians, and requests to withdraw written consents to adoption. (E.g., *In re Helen J.,* 31 Cal.App.3d 238, 244 [107 Cal.Rptr. 106]; *Adoption of Pitcher,* 103 Cal.App.2d 859, 864 [230 P.2d 449].)

Appellants contend, however, that the barrier between special and general proceedings is yielding to a trend of requiring decisions to be accompanied by findings, citing *In re Rose G.,* 57 Cal.App.3d 406 [129

[2]On October 8, 1975, the Lavallees filed a petition for writ of supersedeas in this court for a stay pending appeal of the order transferring physical custody of M. from the Lavallees to the Dunns. We denied the petition and a similar petition was lodged with the Supreme Court. The Supreme Court issued a temporary stay but ultimately the stay was lifted and the petition was denied.

Cal.Rptr. 338], where the court held written findings must accompany an order rendered in a proceeding under Civil Code section 232 declaring a child free from parental custody and control.[3] (All statutory references

[3]Civil Code section 232 provides as follows:

"(a) An action may be brought for the purpose of having any person under the age of 18 years declared free from the custody and control of either or both of his parents when such person comes within any of the following descriptions:

"(1) Who has been left without provision for his identification by his parent or parents or by others or has been left by both of his parents or his sole parent in the care and custody of another for a period of six months or by one parent in the care and custody of the other parent for a period of one year without any provision for his support, or without communication from such parent or parents, with the intent on the part of such parent or parents to abandon such person. Such failure to provide identification, failure to provide, or failure to communicate shall be presumptive evidence of the intent to abandon. Such person shall be deemed and called a person abandoned by the parent or parents abandoning him. If in the opinion of the court the evidence indicates that such parent or parents have made only token efforts to support or communicate with the child, the court may declare the child abandoned by such parent or parents. In those cases in which the child has been left without provision for his identification and the whereabouts of the parents are unknown, a petition may be filed after the 120th day following the discovery of the child and citation by publication may be commenced. The petition may not be heard until after the 180th day following the discovery of the child.

"The fact that a child is in a foster care home, licensed under subdivision (a) of Section 16000 of the Welfare and Institutions Code, shall not prevent a licensed adoption agency which is planning adoption placement for the child, from instituting, under this subdivision, an action to declare such child free from the custody and control of his parents. When the requesting agency is a licensed county adoption agency, the county counsel and if there is no county counsel, the district attorney shall institute such action.

"(2) Who has been cruelly treated or neglected by either or both of his parents, if such person has been a dependent child of the juvenile court, and such parent or parents deprived of his custody for the period of one year prior to the filing of a petition praying that he be declared free from the custody and control of such cruel or neglectful parent or parents.

"(3) Whose parent or parents suffer a disability because of the habitual use of alcohol, or any of the controlled substances specified in Schedules I to V, inclusive, of Division 10 (commencing with Section 11000) of the Health and Safety Code, except when such controlled substances are used as part of a medically prescribed plan, or are morally depraved, if such person has been a dependent child of the juvenile court, and the parent or parents deprived of his custody because of such disability, or moral depravity, for the period of one year continuously immediately prior to the filing of the petition praying that he be declared free from the custody and control of such parent or parents. As used in this subdivision, 'disability' means any physical or mental incapacity which renders the parent or parents unable to adequately care for and control the child.

"(4) Whose parent or parents are convicted of a felony, if the felony of which such parent or parents were convicted is of such nature as to prove the unfitness of such parent or parents to have the future custody and control of the child, or if any term of sentence of such parent or parents is of such length that the child will be deprived of a normal home for a period of years.

"(5) Whose parent or parents have been declared by a court of competent jurisdiction wherever situated to be mentally deficient or mentally ill, if, in the state or county in which the parent or parents are hospitalized or resident, the State Director of Health, or his equivalent, if any, and the superintendent of the hospital of which, if any, such parent or parents are inmates or patients certify that such parent or parents so declared to be

will be to the Civil Code unless otherwise indicated.) *Rose G.* involved a suit. prosecuted by the county adoption department to declare two minors free from parental custody and control because of parental abandonment. The parents' request for findings of fact and conclusions of law was denied. On appeal by the parents, the reviewing court reasoned that state intrusion into the family unit and severance of the child-parent bond must be predicated on something more substantial than a finding of abandonment implied from the judgment. (*Id.,* at p. 417.) The rubric of a "special proceeding" could not, in the court's opinion, mask the critical issues to be decided and the tremendous consequences which flow from a court order decreeing removal of a child from his natural parents. The gravity of the proceeding, coupled with the need for adequate appellate review and basic due process precepts persuaded the court that written findings must be made in section 232 proceedings if a party to the proceedings so requests. (*Id.,* at pp. 416-418.)

mentally deficient or mentally ill will not be capable of supporting or controlling the child in a proper manner.

"(6) Whose parent or parents are, and will remain incapable of supporting or controlling the child in a proper manner because of mental deficiency or mental illness, if there is testimony to this effect from two physicians and surgeons each of which must have been certified either by the American Board of Psychiatry and Neurology or under Section 6750 of the Welfare and Institutions Code. If, however, the parent or parents reside in another state or in a foreign country, the testimony herein may be supplied by two physicians and surgeons who are residents of such state or foreign country, if such physicians and surgeons have been certified by a medical organization or society of that state or foreign country to practice psychiatric or neurological medicine and if the court determines that the certification requirements of such organization or society are comparable to those of the American Board of Psychiatry and Neurology.

"The parent or parents shall be cited to be present at the hearing, and if he or they have no attorney, the court shall appoint an attorney or attorneys to represent the parent or parents and fix the compensation to be paid by the county for such services, if he determines the parent or parents are not financially able to employ counsel.

"(7) Who has been cared for in one or more foster homes under the supervision of the juvenile court, the county welfare department or other public or private licensed child-placing agency for two or more consecutive years, providing that the court finds beyond reasonable doubt that return of the child to his parent or parents would be detrimental to the child and that the parent or parents have failed during such period, and are likely to fail in the future, to

"(i) Provide a home for said child;

"(ii) Provide care and control for the child; and

"(iii) Maintain an adequate parental relationship with the child.

"Physical custody of the child by the parent or parents for insubstantial periods of time during the required two-year period will not serve to interrupt the running of such period.

"(b) A licensed adoption agency may institute under this section, an action to declare a child, as described in this section, free from the custody and control of his parents. When the requesting agency is a licensed county adoption agency, the county counsel, or if there is no county counsel, the district attorney shall in a proper case institute such action." (The statute has since been amended in particulars not here pertinent.)

We are disinclined to extend *Rose G.* to the instant case in view of the fundamental differences which distinguish a section 226a[4] proceeding from that under section 232. Section 232 (quoted at fn. 3, *ante*) specifies the sorts of parental conduct which will justify removal of the child from his home. (See generally, 6 Witkin, Summary of Cal. Law (8th ed. 1974) Parent and Child, pp. 4628-4632.) The common concern of section 232's provisions is parental conduct falling short of the minimal level demanded by society. The severity of the neglect or depravity required to invoke the statute reflects the concern for the rights of the parent, as well as the best interests of the child, and recognizes the far-reaching implications of the "drastic remedy" of involuntary severance of the child-parent bond. (See *In re T. M. R.*, 41 Cal.App.3d 694, 703-704 [116 Cal.Rptr. 292].) Due process and basic fairness may well require the judgment to be supported by articulated reasons before a parent is made to suffer the ultimate penalty of losing a child because of alleged neglect, cruelty, depravity or physical abuse of the minor.[5] (Cf. *In re Rose G., supra,* 57 Cal.App.3d 406, 421.) We also take note of the

[4]Section 226a provides as follows:

"Once given, consent of the natural parents to the adoption of the child by the person or persons to whose adoption of the child the consent was given, may not be withdrawn except with court approval. Request for such approval may be made by motion, or a natural parent seeking to withdraw such consent may file with the clerk of the superior court where the petition is pending, a petition for approval of withdrawal thereof, without the necessity of payment of any fee for the filing of such petition. The petition shall be in writing, and shall set forth the reasons for withdrawal of consent, but otherwise may be in any form.

"The clerk of the court shall set the matter for hearing, and shall give notice thereof to the State Department of Health, to the persons to whose adoption of the child the consent was given, and to the natural parent or parents by certified mail to the address of each as shown in the proceeding, at least 10 days before the time set for hearing.

"The State Department of Health or the licensed county adoption agency shall, prior to the hearing of the motion or petition for withdrawal, file a full report with the court and shall appear at the hearing to represent the interests of the child.

"At the hearing, the parties may appear in person or with counsel. The hearing shall be held in chambers, but the court reporter shall report the proceedings and his fee therefor shall be paid from the county treasury on order of the court. If the court finds that withdrawal of the consent to adoption is reasonable in view of all the circumstances, and that withdrawal of the consent will be for the best interests of the child, the court shall approve the withdrawal of the consent; otherwise the court shall withhold its approval. If the court approves the withdrawal of consent, the adoption proceeding shall be dismissed.

"Any order of the court granting or withholding approval of a withdrawal of a consent to an adoption may be appealed from in the same manner as an order of the juvenile court declaring any person to be a ward of the juvenile court."

[5]We note that case law addressing the protections encircling proceedings for forfeiture of parental custody have stated the necessity of adhering to basic due process considerations. (See *In re B. G.*, 11 Cal.3d 679, 688 [114 Cal.Rptr. 444, 523 P.2d 244]; *In re J. T.*, 40 Cal.App.3d 633, 639 [115 Cal.Rptr. 553]; *In re Neal D.*, 23 Cal.App.3d 1045, 1048 [100 Cal.Rptr. 706].)

recent decision of *In re B.G., supra,* 11 Cal.3d 679, involving a custody dispute between foster parents and the natural mother in a juvenile court proceeding. The court held that section 4600 of the Family Law Act governed and that an award of a child to a nonparent predicated upon a parent's unfitness to care for the child must be supported by an express finding that parental custody would be detrimental and harmful to the minor. (*Id.,* at pp. 695-699.) The interplay of section 232 with section 4600[6] as interpreted by *In re B.G.* may well compel the conclusion that a finding of parental unfitness must be memorialized by written findings so that the litigant and a reviewing tribunal have fair and adequate notice of the court's reasons.

Section 226a on the other hand focuses not upon whether a court should order the "drastic remedy" of severing the parent-child relationship but upon whether a natural parent should be permitted to withdraw a consent to the adoption of the child. This contest pits the rights of the biological parent against the interests of the adoptive or "de facto parent."[7] The rights of the natural parent find expression in the "doctrine of parental preference" (*In re B.G., supra,* 11 Cal.3d 679, 693-695, 698; § 4600), the interests of the de facto parent are also substantial in nature and find protection in court decisions. (*In re B.G., supra,* 11 Cal.3d 679, 692-693.) The rights of the adoptive parents are not, however, enveloped in the same degree of due process protection which

---

[6]Section 4600 provides:

"In any proceeding where there is at issue the custody of a minor child, the court may, during the pendency of the proceeding or at any time thereafter, make such order for the custody of such child during his minority as may seem necessary or proper. If a child is of sufficient age and capacity to reason so as to form an intelligent preference as to custody, the court shall consider and give due weight to his wishes in making an award of custody or modification thereof. Custody should be awarded in the following order of preference:

"(a) To either parent according to the best interests of the child.

"(b) To the person or persons in whose home the child has been living in a wholesome and stable environment.

"(c) To any other person or persons deemed by the court to be suitable and able to provide adequate and proper care and guidance for the child."

"Before the court makes any order awarding custody to a person or persons other than a parent, without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interests of the child. Allegations that parental custody would be detrimental to the child, other than a statement of that ultimate fact, shall not appear in the pleadings. The court may, in its discretion, exclude the public from the hearing on this issue."

[7]A de facto parent is one "who, on a day-to-day basis, assumes the role of parent, seeking to fulfill both the child's physical needs and his psychological need for affection and care". (*In re B.G., supra,* 11 Cal.3d 679, 692, fn. 18.)

attaches to the divestiture of parental custody since the adoptive parent's right to custody does not vest until the adoption proceeding culminates in a favorable award (*Adoption of Driscoll,* 269 Cal.App.2d 735, 738 [75 Cal.Rptr. 382]; *Adoption of Schroetter,* 261 Cal.App.2d 365, 370 [67 Cal.Rptr. 819]; see *Adoption of Graham,* 58 Cal.2d 899, 906 [27 Cal.Rptr. 163, 377 P.2d 275]) because until then the legal relationship between natural parent and child has not been severed.[8] This is not to say that the adoptive parents are unshielded from arbitrary withdrawals of consent. Section 226a requires that revocation of consent be reasonable under the circumstances and in the best interests of the child.

■ It is evident that the Legislature, by the broad statutory criteria prescribed in section 226a, has vested the trial court with considerable discretion in deciding whether to permit withdrawal of consent. (See *Adoption of Curtis,* 195 Cal.App.2d 179, 181 [15 Cal.Rptr. 331]; *Adoption of Pitcher, supra,* 103 Cal.App.2d 859, 864.) This discretion is made necessary by the absence of a mechanical or talismanic solution by which section 226a contests may be resolved. The sum of intangibles which go into the statutory "reasonable under the circumstances" and "best interests" formula is in part comprised of the demeanor, attitudes, intonation, sincerity and personality of the witnesses as well as more exact concerns as to the relative fitness of the parties, educational and religious opportunities for the child, the emotional and love attachments the parties have for the child and the child's mental and physical health.[9] Many of these criteria are incapable of full flavor and expression by written findings which will express only the judge's conclusions, not his primary perceptions. ■ We conclude, therefore, that the nature of the rights involved, the broad discretion vested in the trial court in passing upon a section 226a petition, and the absence of a common law or statutory right to written findings compel the conclusion that the court committed no error in refusing appellants' request for findings.

Appellants seek to avoid this result by advancing two considerations which, in their opinion, compel us to find that a court must articulate its findings in a formal statement: (1) Articulated reasons are often essential to meaningful appellate review; and (2) the constraints resulting from

---

[8]The law has often noted differences in due process protections which enshroud vested and contingent rights. (See *Turner* v. *Board of Trustees,* 16 Cal.3d 818, 824 [129 Cal.Rptr. 443, 548 P.2d 1115].)

[9]See generally, Kay & Phillips, *Poverty and the Law of Child Custody,* 54 Cal. L. Rev. 717, 719; Foster & Freed, *Child Custody,* 39 N.Y.U.L. Rev. 423, 439-441.

formal reasons guard against the hasty decision and concomitantly imbue public confidence in the decision-making process.

These same considerations were considered by the Supreme Court in *People* v. *Edwards,* 18 Cal.3d 796 [135 Cal.Rptr. 411, 557 P.2d 995] where the court declined to require a statement of formal reasons when a defendant is denied probation. The court reasoned that because a denial of probation is a judicial act invested "with the full panoply of procedural protections" (18 Cal.3d at p. 803), the transcribed record of court proceedings affords "a solid basis of review" and preserves fundamental fairness even without the salutary benefits of formal findings. (18 Cal.3d at p. 804.) The court further observed that the transcribed record concomitantly guards against the careless decision because it reveals the evidence and the legal basis upon which the court exercised its judgment. (18 Cal.3d at p. 805.)

We believe these same principles control here. Appellants have available for our scrutiny a full record of the proceedings below. While the statute provides that "[i]f the court finds" that the statutory criteria exist, it shall approve the withdrawal of consent, a finding that the criteria were met may be presumed from the order approving withdrawal of consent. Indeed the record here affirmatively shows that the trial judge determined that withdrawal of consent was reasonable in the circumstances and for the best interest of the child. While we believe it would be better practice to include that determination in the final order, to reverse this case simply because the order fails to include a recitation that the court found the statutory criteria were present would be elevating form over substance. Since the record below adequately preserves appellants' right to an effective and meaningful review of the order approving withdrawal of consent, denial of the request for findings does not compel reversal.

II

▮ Appellants next aver error in the court's refusal to grant the State Department of Health's motion for judgment on the pleadings.[10]

[10]Section 226a requires that the State Department of Health participate in the proceedings to protect the interests of the child. Appellants have requested by way of letter dated November 5, 1976, that we consider *In re Dunlap,* 62 Cal.App.3d 428 [133 Cal.Rptr. 310]; they do not indicate, however, why this case is relevant. *Dunlap* held, inter alia, that a child has a statutory right to appointment of counsel (§§ 237, 237.5) in a section 232 proceeding unless the court cogently and persuasively justifies the absence of need for appointment of counsel. If, and we assume, appellants advance this case in

Appellants had joined in the motion for a ruling on the pleadings. Appellants argue[11] that *Hall* v. *Department of Adoptions,* 47 Cal.App.3d 898 [121 Cal.Rptr. 223], necessitates the conclusion that before a court may grant permission to withdraw consent, the party seeking relief must plead and prove that consent was induced by fraud, duress, or coercion. Stated differently, the argument is consent once given is irrevocable absent coercive or fraudulent conduct.

*Hall* dealt with a mother who had relinquished her child for adoption to a state agency pursuant to section 224m.[12] The mother then sued to set aside the relinquishment. In reversing a judgment in favor of the mother, the reviewing court held that inasmuch as the complaint failed to set forth factual allegations of wrongful or fraudulent conduct on the part of the county, the mother had failed to state a cause of action. (*Id.,* at p. 902.) In holding that allegation and proof of fraud or wrongful conduct are necessary to the rescission of a relinquishment, the court stated: "The Legislature has made detailed and specific provisions for the adoption of minors. The legislative purpose behind this provision is

support of the contention that M. was not represented by counsel, *Dunlap* avails appellants nothing. In *Dunlap* the deputy county counsel specifically stated he was not counsel for the child (*Id.,* at pp. 436, 439-440); here, the Department of Health was present to protect the best interests of M. and at no time expressed ambivalence about that representation.

[11]The brief for the State Department of Health does not contest the court's ruling on this matter.

[12]Section 224m provides:

"The father or mother may relinquish a child to a licensed adoption agency for adoption by a written statement signed before two subscribing witnesses and acknowledged before an authorized official of an organization licensed by the State Department of Health to find homes for children and place children in homes for adoption. Such relinquishment, when reciting that the person making it is entitled to the sole custody of the minor, shall, when duly acknowledged before such officer, be prima facie evidence of the right of the person making it to the sole custody of the child and such person's sole right to relinquish.

"A parent who is a minor shall have the right to relinquish his or her child for adoption to a licensed adoption agency and such relinquishment shall not be subject to revocation by reason of such minority.

"In cases where a father or mother of a child resides outside the State of California and such child is being cared for and is placed for adoption by an organization licensed by the State Department of Health to place children for adoption, such father or mother may relinquish the child to that organization by a written statement signed by such father or mother before a notary on a form prescribed by the organization, and previously signed by an authorized official of the organization, which signifies the willingness of such organization to accept the relinquishment.

"The relinquishment authorized by this section shall be of no effect whatsoever until a certified copy is filed with the State Department of Health, after which it is final and binding and may be rescinded only by the mutual consent of the adoption agency and the parent or parents relinquishing the child."

best served and the interests of the child are afforded the greatest recognition by giving continued effect to relinquishments and consents to adoption. (*Adoption of Graham,* 58 Cal.2d 899, 907 [27 Cal.Rptr. 163, 377 P.2d 275].)

"Relinquishments, once executed, must be relied upon in order to insure that children will not be forced out of one home and into another at the whims and caprice of emotionally upset and perhaps ill-advised persons. The state has expressed a strong policy in the necessity for giving effect to relinquishments, for to do otherwise would 'open the door to practices which could conceivably discourage adopting parents from opening their hearts and homes to unwanted children . . . .' (*Adoption of Laws,* 201 Cal.App.2d 494, 498 [20 Cal.Rptr. 64].)" (*Id.,* at pp. 902-903.) Appellants argue that the court's reference to both "consent" and "relinquishment" demonstrates that the standards for revocation of relinquishments and withdrawals of consents are identical.

It is true that *Hall* intimates that fraud or wrongful conduct is necessary to rescind a relinquishment of a child to a state adoptive agency; it does not follow, however, that *Hall* controls a petition to withdraw consent under section 226a.[13]

Section 224m provides in pertinent part: "The relinquishment authorized by this section shall be of no effect whatsoever until a certified copy is filed with the State Department of Health, after which it is final and binding and may be rescinded only by the mutual consent of the adoption agency and the parent or parents relinquishing the child." Once the formalities of the statute are satisfied, legal custody of the child ceases to reside in the natural parents and vests in the state agency. (§ 224n; *Adoption of Driscoll, supra,* 269 Cal.App.2d 735, 738; *Adoption of Schroetter, supra,* 261 Cal.App.2d 365, 370-371; see *Adoption of Graham, supra,* 58 Cal.2d 899, 905-906.) The change of custody and the statutorally ordained finality of the relinquishments are adjuncts of "[t]he legislative scheme . . . [which] contemplates that . . . [§ 224m]

---

[13]None of the cases which have discussed the scope and operation of section 226a have expressly held that fraud or wrongdoing must be pleaded and proved before a court can grant the petition to withdraw consent. (See e.g., *Adoption of Cox,* 58 Cal.2d 434 [24 Cal.Rptr. 864, 374 P.2d 832]; *Adoption of Barnett,* 54 Cal.2d 370 [6 Cal.Rptr. 562, 354 P.2d 18]; *Smith* v. *Superior Court,* 41 Cal.App.3d 109 [115 Cal.Rptr. 677]; *Adoption of Duarte,* 229 Cal.App.2d 775 [40 Cal.Rptr. 671]; *Adoption of Hertz,* 227 Cal.App.2d 269 [38 Cal.Rptr. 618]; *Brooks* v. *Los Angeles County Bureau of Adoptions,* 218 Cal.App.2d 732 [32 Cal.Rptr. 446]; *Adoption of Laws, supra,* 201 Cal.App.2d 494; *Adoption of Curtis, supra,* 195 Cal.App.2d 179; *Adoption of Pitcher, supra,* 103 Cal.App.2d 859.)

proceedings will progress unhampered by extrinsic matters and with assurance that proper proceedings may consummate a valid adoption. [Citation.]" (*Adoption of Graham, supra,* 58 Cal.2d 899, 906; see also, *Hall* v. *Department of Adoptions, supra,* 47 Cal.App.3d 898, 902-903.) Rescission is, therefore, barred except with the mutual consent of the interested parties (§ 224m) or in those circumstances where equity permits rescission for cause. (*Hall* v. *Department of Adoptions, supra,* 47 Cal.App.3d 898, 902-903; *Brooks* v. *Los Angeles County Bureau of Adoptions, supra,* 218 Cal.App.2d 732, 733-734.)

The scheme of section 226a stands in sharp contrast to that of section 224m. ▮ Execution of a consent to adoption in an independent setting, that is, one in which the child is directly placed by his parent with private individuals, operates only to transfer immediate physical custody of the child, legal custody remains with the natural parents until the adoption petition is granted. (*Adoption of Driscoll, supra,* 269 Cal.App.2d 735, 738; *Adoption of Schroetter, supra,* 261 Cal.App.2d 365, 370-371; see *Adoption of Graham, supra,* 58 Cal.2d 899, 906.) Furthermore, section 226a, unlike section 224m, is silent about the finality of the consent and places no limits upon the time in which a petition to withdraw consent may be brought. It follows that a withdrawal of consent neither disturbs the vested rights of any of the parties nor disrupts a legislative scheme of finality. (See *Adoption of Graham, supra,* 58 Cal.2d 899, 905-906.)

Lastly, an action to set aside a relinquishment is a nonstatutory equitable proceeding. The Legislature has neither prescribed the grounds nor procedure for setting aside a relinquishment other than by mutual consent of the adoptive agency and the parent. ▮ With respect to withdrawal of consent, on the other hand, the Legislature has prescribed the procedure and the circumstances under which withdrawal of consent may be approved; the statute expressly permits withdrawal of consent if it "is reasonable in view of all the circumstances" and "will be for the best interests of the child." (§ 226a.) It follows that grounds other than fraud, duress or coercion suffice. (Cf. *Adoption of Pitcher, supra,* 103 Cal.App.2d 859, 863.)

Before the enactment of section 226a (added by Stats. 1949, ch. 731, p. 1348), a consent to adoption was deemed irrevocable but even so it was recognized that this assumed that consent was given freely without fraud or duress. (*In re Barents,* 99 Cal.App.2d 748, 752 [222 P.2d 488].) In

other words, even before section 226a, fraud or duress was always a ground for setting aside a consent. If the criteria of "reasonable in view of all the circumstances" and "best interests of the child" in section 226a are read to embrace withdrawal of consent only upon proof of fraud or duress, the section becomes nugatory. Statutory provisions for adoptive procedures must be construed with the view of accomplishing their purpose. (*Adoption of Graham, supra,* 58 Cal.2d 899, 907; *Adoption of Barnett, supra,* 54 Cal.2d 370, 377-378.) A principal purpose of section 226a is to permit natural parents to withdraw a consent to adoption if it is reasonable and in the best interests of the minor. Were we to adopt appellants' interpretation of the statute, it would render section 226a superfluous. This we decline to do.

Appellants next claim that their constitutional rights will be transgressed unless a requirement of fraud is read into the statutory provision regulating withdrawal of consent. (§ 226a.) Appellants argue that foster parents, whether receiving a child through an institutional (§ 224m) or an independent (§ 226a) adoption are entitled to equal statutory treatment when the natural parent seeks to regain custody of his child.

■ Unless it involves a suspect classification or affects fundamental vested rights, when an equal protection challenge is mounted against a statutory enactment the legislative distinction drawn into question will be sustained if it bears some rational relation to a conceivable state end. (*D'Amico* v. *Board of Medical Examiners,* 11 Cal.3d 1, 16 [112 Cal.Rptr. 786, 520 P.2d 10]; *Westbrook* v. *Mihaly,* 2 Cal.3d 765, 784 [87 Cal.Rptr. 838, 471 P.2d 487].) The statutes in question manifestly do not involve a suspect classification. Nor do they affect fundamental vested rights. The rights of the adoptive parents are contingent until a decree of adoption has been entered. Consequently, the validity of the distinction between agency and independent adoptions insofar as grounds for withdrawal of relinquishment and consent are concerned rests on the rational basis rather than the compelling state interest test. Appellants do not claim otherwise. They maintain there is no rational basis for permitting withdrawal of consents under circumstances different from those allowed for recissions of relinquishments. It follows, so the argument goes, that appellants are being deprived of equal protection under the law.

Appellants gravely misapprehend the degree to which procedural safeguards attend the giving of a consent and the giving of a relinquishment; and hence they fail to perceive the rational basis for disparate

statutory treatment. When natural parents approach a state agency[14] for purposes of relinquishing their child, they are given access to the myriad of services offered by the State Department of Health so they may devise the best plan for the child and themselves. (Cal. Admin. Code, tit. 22, subch. 2, art. 2, § 30593.) If the mother is in financial need but does not qualify for Medi-Cal benefits, she is entitled to draw upon the "Maternity Care Program" to pay for medical expenses which attend birth. (Cal. Admin. Code, tit. 22, *supra,* §§ 30597-30602.) The mother is thus insulated from relinquishing her child solely because of immediate financial need. Finally, if the parents and state agency decide that adoption is the best plan for the family, the relinquishment must be procured through meticulous observance of procedural safeguards.[15]

If, however, the natural parents elect to place the child themselves, their consent, while given before a state adoption worker (§§ 226.1, 226.2), is derived without the same degree of psychological counseling and is executed pursuant to less rigid administrative guidelines.[16] In short, the consent is not enshrouded with the same degree of

---

[14]By this we mean either a bona fide state agency or an adoptive service licensed and operated under the supervision of the State Department of Health.

[15]The precise manner in which the relinquishment must be secured is as follows:

"Prior to taking a relinquishment the agency shall determine that the parent has chosen the plan of adoption for the child and that the child can be freed for adoption. At the time of taking the relinquishment, the adoption worker must determine from his or her own observations that the parent understands the content, nature, and effect of signing the relinquishment. The worker's observations must be recorded in the case record.

"If the worker has a question based upon observations of the parent's behavior or capacity for understanding the nature and effect of signing the relinquishment, this question must be resolved through a referral to a physician for evaluation. After receiving an evaluation from the physician, a relinquishment may be taken if there is no question as to the parent's competency or capacity to comprehend what is involved in the relinquishment process.

"Necessary verifications of competency shall be made before the relinquishment is filed." (Cal. Admin. Code, tit. 22, § 30613. See also § 224m.)

[16]Compare the guidelines set forth in footnote 15, *ante,* with the following prescribed for the taking of a consent:

"A consent shall be taken from a parent only after a petition for adoption has been filed. The consent from the parent shall be taken only after the child is born. The mother's consent shall be taken only after she has been medically discharged from the hospital.

"When a mother is in the hospital for a period of more than five days, a consent may be taken after obtaining written clearance from her physician that the mother is medically competent to execute a valid consent.

"Necessary verifications of competency shall be made before the consent is signed." (Cal. Admin. Code, tit. 22, § 30715.)

"The child shall be identified as shown on the birth registration by name, sex, birthdate, and place of birth.

procedural safeguards which envelop a relinquishment. Accordingly, there is a likelihood that a consent to adoption may not be a product of considered judgment formed after full exploration of available alternatives. It is, therefore, both reasonable and constitutionally permissible for the Legislature to prescribe different standards for withdrawals of consents than for recissions of relinquishments.

## III

Appellants and the State Department of Health vigorously contend that the court's determination that withdrawal of consent was both reasonable and in the best interests of M. is unsupported by substantial evidence. Their argument, however, mistakenly assumes that if the evidence against the judgment preponderates, or if there is a substantial conflict in the evidence, reversal must follow as a matter of law. The

---

"The full names of the adopting parents shall appear on the consent at the time the parent signs the form. The agency representative shall not cover the names.

"The consent signed by a natural parent to adoption of the child by a married couple does not support, and shall not be used in completing the adoption by one of them alone, except in cases in which the natural parent expressly agrees to this modification." (Cal. Admin. Code, tit. 22, § 30717.)

"(a) Prior to taking a consent of a parent who is a patient in or on leave from a public or private psychiatric facility, or under private or public psychiatric treatment for mental illness, the agency shall:

"(1) Obtain a statement from the treating or supervising physician stating that the parent has the mental capacity to understand the nature and effect of signing a consent.

"(2) Secure parent's signature on the consent within thirty (30) days after the date of examination or evaluation upon which the statement is based.

"(b) If the parent has discontinued psychiatric treatment within the past two years, this shall be verified before the consent is signed. If a parent has consulted a physician or psychiatrist for other reasons, such as marriage counseling or family problems, or for educational purposes (as when in a maternity home), this is not considered to constitute psychiatric treatment for purposes of signing a consent.

"(c) Before taking a consent, if the social worker has a question on the basis of observations or information obtained regarding mental deficiency, the parent shall be referred to a physician or a licensed clinical psychologist for an evaluation of the parent's capacity to understand the content and effect of signing a consent." (Cal. Admin. Code, tit. 22, § 30721.)

"(a) Consent shall not be accepted from a parent who is a patient in or on leave from a public psychiatric facility, or under private or public psychiatric care, when the treating or supervising physician refuses to state in writing that the parent has the capacity to understand the nature and effect of signing a consent.

"(b) The parent who has been judicially determined to be incompetent under Probate Code Sections 1460-1462 is unable to sign a valid consent and consent shall not be accepted as long as the decree remains in force.

"(c) In cases where a parent is not competent to sign a consent the petitioners shall be advised of the possibility of legal action to free the child from parental custody and control under Civil Code Section 232(a)(5) or (a)(6)." (Cal. Admin. Code, tit. 22, § 30723.)

parties urge this tribunal to assume the cloak of a trial judge and reevaluate the evidence and credibility of the witnesses. ■ Our powers, however, are fixed and constrained by the rules of substantial evidence: "When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact." (*Primm* v. *Primm,* 46 Cal.2d 690, 693 [299 P.2d 231], original italics; *Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].) "[W]e have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom." (*Overton* v. *Vita-Food Corp.,* 94 Cal.App.2d 367, 370 [210 P.2d 757].) These are matters resting within the province of the trier of fact. (*Nichols* v. *Mitchell,* 32 Cal.2d 598, 606 [197 P.2d 550].)

■ Our perusal of the record reveals evidence of a substantial and credible nature supporting both prongs of the statutory test. On the issue of whether withdrawal of consent was reasonable, the record reveals that the Dunns, subsequent to the consent by Patricia, married and now constitute a family unit.[17] In addition, the evidence strongly suggests Patricia was misinformed by the adoption worker about the extent to which she could voluntarily withdraw her consent and whether the consent would have effect without the approval of the natural father. Nor was she told what effect, if any, a subsequent marriage to the natural father would have upon the adoption process.

As to whether withdrawal would be in the best interest of M., we note that although the adoption investigator recommended that the petition be denied, he did acknowledge the Dunns to be fit and loving parents capable of providing M. with a suitable home.[18] Additionally, M.'s

---

[17]The law is presently uncertain whether the marriage and consequent legitimation of the child before adoption require the consent of the father to the adoption. In *Adoption of Laws* (1962) 201 Cal.App.2d 494, 501 [20 Cal.Rptr. 64], the court held: "[L]egitimation by marriage subsequent to the giving of consent to adoption by a mother, then unmarried, does not retroactively operate to make the father's consent necessary." In light of *Stanley* v. *Illinois* (1972) 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208], and subsequent cases giving greater recognition to the rights of the father of a child born out of wedlock, there is a serious question whether *Adoption of Laws* is still viable. However, the grounds upon which we affirm the judgment below do not require us to resolve this issue.

[18]Appellants' contention that withdrawal of consent would not be in the best interests of M. is largely predicated upon the proposition that removal of a child of tender years

father is employed and able to provide; his mother dedicates her full time to the home and her family; the Dunns have another baby; other family members live nearby; the Dunns are active in their church; they have suitable religious and educational plans for M.; they urgently want their baby boy back. On this state of the record we cannot say that the court abused or exceeded its discretion in permitting respondents to regain their 14-month-old boy.

## IV

▮ Appellants next assail the trial court's dismissal of their petition for appointment as guardian of the minor and their petition for freedom from parental custody and control (§ 232) as moot. They argue that there was an active controversy over whether the Dunns had abandoned M. ▮ The concept of mootness touches a broad spectrum of facts and circumstances but for present purposes, a case may be deemed moot when although it initially presented an existing controversy, the passage of time, or the acts of the parties, or a court decision have deprived the controversy of its life. (*National Assn. of Wine Bottlers* v. *Paul,* 268 Cal.App.2d 741, 746 [74 Cal.Rptr. 303]; *Paoli* v. *Cal. & Hawaiian Sugar etc. Corp.,* 140 Cal.App.2d 854, 857 [296 P.2d 31]; *Wilson* v. *L. A. County Civil Service Com.,* 112 Cal.App.2d 450, 452-453 [246 P.2d 688].)

▮ When the court permitted the consent to adoption to be withdrawn, legal custody remained where it had always resided, with the natural parents. (*Adoption of Driscoll, supra,* 269 Cal.App.2d 735, 737-738; *Adoption of Schroetter, supra,* 261 Cal.App.2d 365, 371; see *Adoption of Graham, supra,* 58 Cal.2d 899, 905-906.) Since the purpose of an appointment of guardian is to ensure provision for the child (Prob. Code, § 1400), when physical custody coalesced with legal custody, all need for appointment of guardian evaporated. (See § 239; 6 Witkin,

from a stable environment poses a possible danger to the child's emotional growth. (See Goldstein, Freud & Solnit, Beyond the Best Interests of the Child, cited in *Adoption of Michelle T.,* 44 Cal.App.3d 699, 706 [117 Cal.Rptr. 856].) The threat of psychological damage to M. also appears to have influenced the adoption investigator's recommendation. This danger alone is not dispositive nor is the adoption agency's recommendation binding on the court. (*Adoption of Curtis, supra,* 195 Cal.App.2d 179, 182-183; *Adoption of Berth,* 79 Cal.App.2d 221, 225 [179 P.2d 572].) The trial court is committed to evaluating and balancing all the circumstances in arriving at its decision. The weight it assigns to each factor is within its exclusive province and its decision will not be reversed unless it reveals a clear abuse of discretion. (See *Adoption of Curtis, supra,* 195 Cal.App.2d 179, 183; *Adoption of Thevenin,* 189 Cal.App.2d 245, 251 [11 Cal.Rptr. 219].)

Summary of Cal. Law (8th ed. 1974) Parent Child, p. 4635.) The court, therefore, was correct in dismissing the guardianship petition.

 The court's denomination of the petition for freedom from parental custody and control (§ 232) as moot presents a more complex problem. While it may be correct to say that the court's ruling on respondents' section 226a petition did not deprive the abandonment issue of controversy, it is equally true that the court's ruling on the consent matter concomitantly answered the abandonment issue. First, the court's finding that withdrawal of consent would be in M.'s best interests is manifestly incompatible with the conclusion that the Dunns had abandoned M. Secondly, the court's implied determination that the Dunns were fit and loving parents would preclude a finding under section 4600,[19] essential to the severance of the parent-child bond (*In re D. L. C.,* 54 Cal.App.3d 840, 849 [126 Cal.Rptr. 863]), that award of custody to the natural parents would be detrimental and harmful to the child. Lastly, an intent to abandon must be shown by acts of an unequivocal nature. (See *In re Bisenius,* 173 Cal.App.2d 518, 521-522 [343 P.2d 319]; *In re Jones,* 131 Cal.App.2d 831, 834-835 [281 P.2d 310]; *Guardianship of Kerns,* 74 Cal.App.2d 862, 867-868 [169 P.2d 975].) There is no such evidence in the record.

Appellants seek to avoid the trial court's implied ruling of no abandonment[20] by proposing that execution of a consent to adoption constitutes an act of abandonment as a matter of law. Reliance is had upon *Adoption of Oukes,* 14 Cal.App.3d 459 [92 Cal.Rptr. 390], where the court stated: "We construe the finding of a formal consent to adoption by the father in this case to be tantamount to a finding of an abandonment for purposes of . . . section 232. . . ." (*Id.,* at pp. 468-469.) We do not attempt to distinguish *Oukes* from the instant situation; in our opinion, an execution of consent to adoption does not constitute an unequivocal act of abandonment. (Accord: *Adoption of R. R. R.,* 18 Cal.App.3d 973, 985 [96 Cal.Rptr. 308]; *In re Salazar,* 205 Cal.App.2d 102, 107 [22 Cal.Rptr. 770]; *Guardianship of Rutherford,* 188 Cal.App.2d 202, 208 [10 Cal.Rptr. 270, 98 A.L.R.2d 410].) A contrary conclusion would cast section 226a in the bizarre posture of permitting a parent to

[19]See footnote 6, *ante.*

[20]It should be noted that our finding of an implied ruling on the abandonment issue does not run afoul of the holding in *In re Rose G., supra,* 57 Cal.App.3d 406, requiring that formal findings be rendered in section 232 proceedings. *Rose G.* was rendered after the judgment in this case and by its very holding it has only prospective application. (*Id.,* at p. 418.)

regain a child after having abandoned the child by consenting to its adoption. We, therefore, conclude that while the abandonment issue may not have been technically moot, the court nevertheless resolved the issue in ruling upon the withdrawal of consent and, therefore, dismissal of the petition to have the child declared free from custody and control of the natural parents was proper. (See *D'Amico* v. *Board of Medical Examiners,* 11 Cal.3d 1, 18-19 [112 Cal.Rptr. 786, 520 P.2d 10].[21])

## V

Appellants next seek to upset the court's order by speculating as to the court's motives in ruling for respondents. Both appellants and the State Department of Health seek to impeach the judgment by suggesting that the judge ruled for respondents because of his consternation with the State Health Department because of the belated filing of its report. There is nothing in the record, however, which suggests that the court's decision was prompted by improper or retaliatory designs and we decline to impute judicial misconduct upon the mere speculation of the parties. The record reflects that the judge did read and consider all of the reports filed by the governmental agencies before making his decision.

Lastly, appellants urge prejudicial error was committed by the judge in limiting summation by counsel for the parties to 10 minutes. The simple response is that in a nonjury trial, the extent of summation is within the sound discretion of the court. (*Gillette* v. *Gillette,* 180 Cal.App.2d 777, 781 [4 Cal.Rptr. 700]; *Oil Workers Intl. Union* v. *Superior Court,* 103 Cal.App.2d 512, 581 [230 P.2d 71].) If the court felt 10 minutes was sufficient to crystalize the issues, we cannot say it needed more.

The judgment is affirmed.

Gardner, P. J., and Morris, J., concurred.

---

[21]Since the Dunns harbored no intent to abandon within the meaning of section 232, they likewise did not forfeit their right to be appointed guardians of M. on the basis of abandonment. (Prob. Code, § 1409.)