[Civ. No. 21214. Fourth Dist., Div. Two. Nov. 29, 1979.]

KELLY MARTEN et al., Plaintiffs and Appellants, v.
FRED F. THIES, as Director, etc., et al.,
Defendants and Respondents.

162

COUNSEL

Steven P. Beltran and Beverly Wilson Quinn for Plaintiffs and Appellants.

Alan K. Marks, County Counsel, and Richard W. Strong, Deputy County Counsel, for Defendants and Respondents.

OPINION

MORRIS, J.—The defendant placement agency terminated the status of plaintiffs, husband and wife, as prospective adoptive parents when the agency removed the minor child, Sarah Kelly, from their home. Husband and wife appeal from the denial of their petition for writ of mandate, seeking an order reinstating them as prospective adoptive parents and returning the minor child to the home.

Following the removal of the child from their home, husband and wife sought and obtained a grievance review hearing pursuant to California Administrative Code, title 22, section 30684.

The statement of facts as found by the administrative hearing officer was submitted to the trial court by stipulation and no additional evidence was presented.[1] The facts pertinent to this appeal may be briefly stated.

The husband and wife, Kelly Marten and Kathy Marten, were initially screened, qualified, and accepted by respondent San Bernardino County Adoption Services (Agency) as prospective adoptive parents in January of 1976.

---

[1]The petition for writ of mandate was submitted with the stipulation that the court could read and consider the report of the grievance review agent and that no transcript of the testimony taken would be submitted. Under these circumstances this court must accept as true the facts set forth in the statement of facts submitted to the trial court.

On May 17, 1977, a then 15-week-old minor child, Sarah Kelly, was placed in husband and wife's home on a "quasi-adoptive" basis, which was formalized as an adoptive placement on June 28, 1977, after the child became legally free for adoption. Husband and wife were experiencing "marital problems" of an unspecified nature during the month of May 1977 prior to the placement. This fact was not revealed to the Agency.

Although the husband and wife's relationship temporarily improved, it again deteriorated, and in January of 1978, they separated. Contrary to their agreement with the Agency, they did not inform the Agency of this change in their circumstances, and they did not seek any professional help for their marital problems.

Following their separation, the husband and the wife each dated other persons, and at the time of the grievance review hearing, the husband was cohabiting with another woman, with the announced intention of continuing to do so indefinitely. The husband did continue to provide some financial support to the wife.

In April of 1978, the Agency received an anonymous phone call stating that the husband and the wife were separated, and expressing concern regarding the care of the child by the husband and wife. At that time the wife and the minor child were out of the state. The Agency had authorized the wife to take the minor child to Texas. Instead, she had taken the child to Nebraska without the knowledge or consent of the Agency.

On June 5, 1978, following the wife's return to California, an Agency social worker interviewed the husband and wife jointly. The husband and wife admitted to the social worker at this time that they were having marital problems, had had marital problems at the time the child was placed with them, that they had separated in January 1978, and had no plans to seek marital counseling or to reconcile. They further admitted that they had not informed the Agency of their changed circumstances out of fear that the child would be removed from them.

The social worker advised the husband and wife that she would consult with her supervisors, but that removal of the child was a possibility. On July 5, 1978, in a separate interview between the social worker and the husband, the husband stated that if the child were to be removed

from the family home there would be no possibility of a reconciliation with his wife.

In order to obtain a second opinion, an adoptions social worker was assigned to make a psychosocial assessment of the situation. He interviewed the wife on July 24, 1978, and reported the following impressions. The wife was somewhat depressed, suffered from a high level of anxiety, had an immense over-investment in the child as her only source of affection, and felt "abandoned" by the husband. She displayed a passive acceptance of her situation and a continued dependence on the husband for financial aid. Her reality situation was continuing to deteriorate. Since the separation she had managed on financial contributions from the husband and small money contributions from a neighbor and money and food from her mother. She had only managed to be employed for one week, and had no significant work history or job skills.

The second social worker was of the opinion that the child had suffered developmentally since January 1978, because of the absence of a father figure in the home, and that greater difficulties would arise in the future because of this lack. He found nothing to indicate that the child was physically suffering or that she was in any immediate danger; she appeared well cared for. He too advised the wife of the possibility that the child would be removed from her home. Thereafter, he did recommend the child's removal from the home.

Based upon the social workers' assessment of this case situation, the Agency concluded that: (a) the placement did not meet the Agency's commitment to the natural mother to place the child in a two-parent family; (b) the placement was not in keeping with section 30627, subdivision (c) of title 22 of the California Administrative Code which gives preference to two-parent families over single-parent families; (c) the placement did not have sufficient supports and resources to meet the child's continuing physical and emotional developmental needs.

The acting chief of adoptions presented the Agency's evaluation to the director of the department of public social services, respondent Fred F. Thies, and recommended that the child be removed forthwith. The acting chief further recommended that no advance notice of the removal should be given to the husband and wife because the Agency believed that such notice would place the child in imminent danger because of the likelihood that the wife would flee with the minor child.

Based upon the evidence presented to him, the director found that the child would be placed in imminent danger if notice were given, and directed that the child be removed from the home without prior written notice.

The husband and wife requested a grievance review hearing pursuant to section 30684 of title 22 of the California Administrative Code. Thereafter, pursuant to the findings and recommendations of the grievance review agent, the director approved and issued a grievance review decision upholding the actions of the Agency, finding that the county adoption services and the director of the department of public social services had sufficient and substantial cause to believe that the child Sarah Kelly Marten was a child whose health and safety were in jeopardy, and that she was in imminent danger and that the jeopardy would be greatly increased if prior written notice of removal were to be given to the husband and wife.

Following the submission of the petition for writ of mandate in the superior court, that court, exercising its independent judgment found that "the findings of the Review Agent are supported by his summary of facts and that his recommendations are supported by his findings." The court further found that the return of the child, Sarah Kelly, to the husband and wife "would not be in the best interest of the child, and in fact would be detrimental to the child." The petition was denied. This appeal followed.

Husband and wife appear to make the following contentions on appeal.

1. The removal of the minor child Sarah Kelly from their home without prior written notice constituted a denial of procedural due process of law under the Fourteenth Amendment, and

2. The separation of the husband and the wife does not disqualify them for the continuing status of prospective adoptive parents.

In her reply brief, the wife makes the additional contention that,

3. The best interests of the child require that independent counsel be appointed to represent the child in these proceedings.

I

DUE PROCESS

Subject to constitutional limitations, the controlling authority for the termination of adoptive placement is Civil Code section 224n which provides in pertinent part as follows: "The agency to which a child has been relinquished for adoption shall be responsible for the care of the child, and shall be entitled to the exclusive custody and control of the child at all times until a petition for adoption has been granted. Any placement for temporary care, or for adoption made by the agency, may be terminated at the discretion of the agency at any time prior to the granting of a petition for adoption. In the event of termination of any placement for temporary care or for adoption, the child shall be returned promptly to the physical custody of the agency."

The statute makes no provision for notice and hearing as a basis for terminating adoptive placement and removal of the child prior to the filing of an adoption petition. Nor does the statute provide for judicial review of such agency action.[2] To guard against the possibility of arbitrary agency action, the appellate court in *Rodriguez v. Superior Court* (1971) 18 Cal.App.3d 510 [95 Cal.Rptr. 923], held that the administrative action of an agency in a preadoption placement should be subject to judicial review. The *Rodriguez* court declared: "The manifest importance of an adoption to the welfare of a child, as well as the importance to the prospective parents and to the state, impel us to conclude that the administrative action of the agency in a pre-adoption placement should be subject to judicial review. Although no provision for such review is found in section 224n and relevant sections of the Civil Code, we hold that an order by an adoption agency to terminate an adoptive parent-child placement status is a reviewable administrative

---

[2]The statute does provide for notice and hearing prior to removal after the adoption petition is filed. The second paragraph of Civil Code section 224n provides as follows: "No petition may be filed to adopt a child relinquished to a licensed adoption agency or a child declared free from the custody and control of either or both of his parents and referred to a licensed adoption agency for adoptive placement, except by the prospective adoptive parents with whom the child has been placed for adoption by the adoption agency. After the petition for adoption has been filed, the agency may remove the child from the prospective adoptive parents only with the approval of the court, upon motion by the agency after notice to the prospective adoptive parents, supported by an affidavit or affidavits stating the grounds on which removal is sought. If an agency refuses to consent to the adoption of a child by the person or persons with whom the agency placed the child for adoption, the superior court may nevertheless decree the adoption if it finds that the refusal to consent is not in the best interest of the child."

order within the ambit of sections 1084 and 1085 of the Code of Civil Procedure." (*Id.,* at p. 513.)

In *C. V. C.* v. *Superior Court* (1973) 29 Cal.App.3d 909 [106 Cal.Rptr. 123], the court expanded the right to judicial review which had been extended to adoptive parents in *Rodriguez.* The court in *C. V. C.* discovered that the Fourteenth Amendment's guarantee of due process requires that prospective adoptive parents be given notice and an opportunity to be heard before the termination of status and removal of the child from the preadoptive placement except in extraordinary circumstances.

In elaborating its review concept the court stated, "Entitlement to procedural protections depends upon the extent to which 'grievous loss' is threatened; it requires the court to weigh the individual's interest in avoiding the loss against the governmental interest in summary adjudication. The opportunity for hearing must precede, not follow, the deprivation, except for extraordinary occasions where some valid governmental interest justifies summary deprivation." (*C. V. C.* v. *Superior Court, supra,* 29 Cal.App.3d 909, 915, fns. omitted.)

The *C. V. C.* court recognized that the governmental interest in preadoption placement is weighty. "The statutory system for relinquishment to the agency, for agency placement and agency approval, bespeaks a state policy to promote the child's welfare in derogation of all other values. Civil Code section 224n...distinctly expresses the state's ongoing interest in terminating an agency placement whenever the child's welfare is endangered. It expresses a legislative design to give the prospective parents only provisional and tentative status until they file an adoption petition. Until then, the licensed adoption agency is entitled to custody and control 'at all times'; the placement may be terminated 'at any time' at the agency's discretion; upon termination the child is to be returned 'promptly' to the physical custody of the agency. These firm legislative expressions were designed to elevate the placement agency's discernment of danger above the interests of the prospective parents." (*C. V. C.* v. *Superior Court, supra,* 29 Cal.App.3d 909, 916.)

Nevertheless, the court found that, in the absence of imminent danger to the child, the public interest in terminating placement without prior notice and hearing is outweighed by the "grievous loss" threatening the prospective parents. The court noted that the second paragraph

of Civil Code section 224n provides for notice and hearing if the agency wishes to remove the child after an adoption petition has been filed, and found that the "constitutional entitlement of the prospective parents is no less preceding the petition's filing." (*C. V. C.* v. *Superior Court, supra,* 29 Cal.App.3d 909, 917, fn. omitted.)

Whether or not this broad statement can be fully justified in view of the state's paramount interest in promoting the child's welfare (any delay in finding a proper permanent placement may be detrimental to the child), the California Administrative Code, title 22, section 30684, now incorporates the requirements unfolded in *C. V. C.*

The section provides in pertinent part as follows:

"30684. Grievance Procedures. (a) Each . . . licensed adoption agency shall make provision for the review of complaints by adoptive parent(s) as related to the placement, care, or removal of children from an adoptive home. All issues shall be considered in the best interests of the child.

"(b) Definitions

" . . . . . . . . . . . . . . .

"(2) Child in Imminent Danger—A child whose health and safety are in jeopardy.

" . . . . . . . . . . . . . . .

"(5) Adoptive Parents(s)—Person(s) with whom a licensed adoption agency in California has placed a child for adoption and for whom an adoption petition has not been filed.

" . . . . . . . . . . . . . . .

"(d) Notification of Intent to Move Child.

"(1) Advance Notice Requirements. The adoptive parent(s) shall have not less than seven calendar days' written notice of the agency's intention to remove a child placed in the home. The exceptions are when:

"(A) The agency director has reasonable cause to believe the child is in imminent danger, the child may be removed without prior notice but within seven days written notice shall confirm reasons for removal...."

It is clear that the Agency followed the removal procedure authorized in the case of a child who is in "imminent danger." Husband and wife do not quarrel with the principle that their right to procedural due process is to be balanced against the state's interest in terminating adoption agency placements without prior notice and hearing whenever the child's welfare is endangered. However, husband and wife contend that here the child's danger was not imminent but merely "potential" or "ultimate," and therefore the public interest could well afford the time and effort consumed by according them a preremoval hearing.

Because of the fundamental interest involved, the court correctly applied the independent judgment test in weighing the evidence. (*C. V. C. v. Superior Court, supra,* 29 Cal.App.3d 909, 919.) The court found that the findings of the review agent are supported by the weight of the evidence in the whole record, that the review agent's recommendations are supported by the findings and that the return of the child to the husband and wife would be detrimental to the child.

The issue presented by the contention that the husband and wife were deprived of due process is whether there is substantial evidence to support the trial court's determination that the finding, that the Agency director had reasonable cause to believe the child was in "imminent danger," is supported by the weight of the evidence. We have concluded that there is.

Husband and wife would have us define "imminent danger" as "immediate physical danger." The term may not be so narrowly defined. The Administrative Code, title 22, section 30684, subdivision (b) (2) defines the words "Child in Imminent Danger" as "A child whose health and safety are in jeopardy." It seems clear that by so defining the term it was intended to include the "risk" of injury or "projected" danger as well as present or existing danger.

This is particularly so in view of the overriding statutory purpose of promoting the child's welfare. Where the agency reasonably believes

that the child's health and safety would be endangered by prior notification of the agency's intent to remove the child, the agency is under a duty to withhold notification by reason of the overriding principle that it must act in the best interests of the child.

In this case the acting chief of adoptions presented the Agency's evaluation to Director Thies, and recommended that the child be removed forthwith, and that no preremoval notice be given the husband and wife because to do so, in the Agency's judgment, would place the child in imminent danger because the wife was likely to flee with the minor child.

The evidence supporting the reasonableness of this belief consisted of: (1) the husband and wife's concealment of their marital differences in order to obtain the adoptive placement; (2) their failure to report their separation as required by their agreement with the Agency; (3) the wife's previous conduct in taking the child to an unauthorized destination out of the state; (4) the wife's emotional instability and over-dependence on the child for her emotional needs; (5) insensitivity of both husband and wife to the child's emotional and developmental needs; and (6) the fact that the fear of losing the child had been the stated reason for their untruthfulness and subterfuge. In view of this history, the director's belief that the wife might flee with the child was clearly reasonable.

Moreover, there was evidence that the child had already suffered "developmentally" because of the changed circumstances in the home. Such emotional endangerment is within the definition of "imminent danger." We conclude that the evidence amply supports the trial court's finding.

II

DISQUALIFICATION

Husband and wife next argue that the fact of their marital separation does not "a fortiori" disqualify them as prospective adoptive parents. Be that as it may, that is not the issue presented on the record before this court. ■ The issue we must resolve is whether the trial court properly found that the weight of the evidence supports the finding that

"to return the child, Sarah Kelly, to the petitioners would not be in the best interest of the child, and in fact would be detrimental to the child."

It is immaterial whether under other circumstances marital separation would or would not adversely affect an adoptive placement. The question is whether continued placement in the Marten home is in the best interests of this child.

California Administrative Code, title 22, section 30627, gives expression to the common experience that two-parent families generally best meet the needs of young children. That section clearly prefers such two-parent homes, and only authorizes the acceptance of applications from single persons when two-parent families cannot be found to meet the needs of particular children. In the instant case there is the added factor that the relinquishment was specifically obtained with the tacit understanding that efforts would be made to place the child in such a family unit. This tacit agreement with the natural mother does not, as the husband and wife suggest, indicate any conflict of interest between the Agency and the child. Evidence of this understanding merely serves to underscore the common intelligence regarding the desirability of such a family unit, and that there were no apparent factors negating its desirability in this case.

In addition to the general sociological preference given two-parent families as adoptive placements, the husband and wife's home was clearly deficient in other important respects, to wit, emotional stability of the parents, parental sensitivity to the child's developmental needs, trustworthiness of the parents and their willingness to abide by the rules, maturity of the parents, motivation to correct deficiencies, and economic security. It appears from an examination of the record that these prospective adoptive parents were selfishly motivated in adopting the child to satisfy their own emotional needs, and were not sufficiently concerned with the welfare of the child. The concealment of their marital difficulties and failure to report their separation suggest that the initial placement may have been sought in an effort to salvage a failing marriage. It is unfortunate when natural parents resort to such practices; to permit adoption to be used for such purposes would be a serious breach of duty on the part of the Agency.

There is clearly substantial evidence to support the trial court's determination that the Agency findings were supported by the weight of the

evidence, and that the findings supported the decision to remove the child and terminate the placement.

## III

### INDEPENDENT COUNSEL

■ Finally, for the first time, in her reply brief, the wife argues that the best interest of the child requires that independent counsel be appointed to represent the child Sarah Kelly in these proceedings, and requests that this case be remanded to the superior court for appointment of counsel, and presumably, to hold a new hearing.

The wife fails to state in what respect an attorney is better qualified to communicate with, and represent the interests of an infant regarding her adoptive placement than the agency established for that purpose, and designated for that purpose by the Legislature.

The only suggestion is that "While parents or public or [quasi]-public agencies claim to speak for the child, each of these parties may have its own particular concern[s] [which] color its presentation of the child's interest." This is undoubtedly true. However, there is absolutely nothing in the record in this case to suggest that respondents in this case had any concern other than the welfare of the child.

The sole suggestion appearing even in the wife's argument is that the "tacit" understanding with the natural parents that the child would be placed in a two-parent home somehow created a conflict of interest. This is presumably on the theory that the commitment to the mother dilutes the responsibility to the child. If that is so, then the Administrative Code itself creates the conflict by preferring two-parent homes. We reject this thesis. Absent a showing of unavailability of a two-parent home that will meet the child's needs, we accept the administrative finding that the needs of this child can best be met by placement in a two-parent home.

Absent a showing of an actual conflict between the interests of the agency and the child, we decline to further encumber the prepetition placement procedure, and thus prolong the delay in permanent placement to the child's detriment, by requiring that separate counsel be appointed for the child.

Because of the husband's and the wife's concealment of their true marital circumstances, they have already delayed the child's placement in a proper adoptive home by several months, to the child's detriment. Further legal maneuvers to perpetuate a relationship initiated by their own wrongful act should not be tolerated.

The judgment is affirmed.

The stay of the decision of Fred F. Thies, Director of San Bernardino County Department of Public Social Services, in this proceeding heretofore granted by this court on May 9, 1979, is hereby vacated.

Kaufman, Acting P. J., and McDaniel, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied February 20, 1980. Bird, C. J., was of the opinion that the petition should be granted.