MARTEN ET UX. *v.* THIES, DIRECTOR OF COUNTY
DEPARTMENT OF PUBLIC SOCIAL
SERVICES, ET AL.

No. A–972.   Decided May 16, 1980

MR. JUSTICE REHNQUIST, Circuit Justice.

Applicants Kelly Marten and Kathy Marten have asked me to stay an order of the California Court of Appeal declining to continue their right to visit their prospective adoptive daughter, Sarah, pending disposition of applicants' appeal or petition for a writ of certiorari to this Court.   The Court of Appeal earlier had rejected applicants' appeal from an order of the Superior Court upholding the decision of the respondent placement agency to terminate applicants' status as Sarah's prospective adoptive parents.   Because I do not believe that four Members of this Court will vote to hear applicants' ultimate appeal or petition, and because the Court of Appeal specifically found that further legal obstacles to Sarah's placement in another adoptive home would be to the child's detriment, I will deny the requested stay.

The historical facts in this case are not in dispute and may be gleaned from the application and the opinion of the California Court of Appeal.   In early 1976, applicants, who are husband and wife, qualified as prospective adoptive parents with respondent San Bernadino County Adoption Services (the Agency).   On May 17, 1977, Sarah, then 15 weeks

old, was placed in applicants' home on a "quasi-adoptive" basis pending final adoption at some later date. At that time, applicants agreed to inform the Agency of any change in their domestic circumstances.

Unbeknownst to the Agency, applicants had been experiencing marital problems even before they took custody of Sarah. These problems finally culminated in a separation in January 1978, when Kelly Marten left his wife and Sarah and moved in with another woman. Contrary to their original agreement, however, applicants did not inform the Agency of this change in circumstances. Applicants apparently remain separated as of this date.

In April 1978 the Agency learned of applicants' separation through a third party. The Agency sent first one and then another social worker to Kathy Marten's home to interview Ms. Marten and to assess Sarah's environment. The first advised applicants that removal of Sarah from their custody was a possibility, but that she would have to consult her superiors. The second social worker concluded that Ms. Marten's psychological state was deteriorating and recommended that Sarah be removed from applicants' home. Upon receiving these reports, the Agency's acting chief of adoptions and its director agreed that Sarah should be removed from Ms. Marten's custody and that the removal should take place without notice to applicants. This latter determination was based on their belief that notice would place Sarah in "imminent danger" because of the perceived likelihood that Ms. Marten would flee from the State with the child. On August 21, 1978, Sarah was, in fact, removed from Ms. Marten's custody without prior notice and was placed in a foster home.

Pursuant to applicable California law, applicants sought administrative review of the Agency's decision to terminate their status as Sarah's prospective adoptive parents. After a hearing, the "Review Agent" issued a decision upholding the Agency. He found, *inter alia,* that there had been substan-

tial cause to believe that Sarah was a child whose health and safety had been in jeopardy, that she had been in imminent danger, and that the jeopardy would have been greatly increased if prior notice of the removal had been given to applicants.

On applicants' petition to Superior Court for a writ of mandate, that court found that the conclusions of the Review Agent were amply supported by the record and that return of Sarah to applicants " 'would not be in the best interest of the child, and in fact would be detrimental to the child.' " 99 Cal. App. 3d 161, 167, 160 Cal. Rptr. 57, 60 (1979).

The Court of Appeal affirmed, rejecting each of the contentions that applicants claim they will advance in their appeal or petition to this Court. First, the appellate court concluded that, while preremoval notice to custodial "parents" in applicants' position was a normal requisite of procedural due process, California law specifically permitted removal without notice where "[t]he agency director has reasonable cause to believe the child is in imminent danger. . . ." 22 Cal. Admin. Code § 30684 (d)(1)(A) (1976). Here, according to the Court of Appeal, substantial evidence supported a finding that Ms. Marten might flee if notified and that such flight would endanger the child. In particular, the Court of Appeal cited

"(1) the husband and wife's concealment of their marital differences in order to obtain the adoptive placement; (2) their failure to report their separation as required by their agreement with the Agency; (3) the wife's previous conduct in taking the child to an unauthorized destination out of the state; (4) the wife's emotional instability and over-dependence on the child for her emotional needs; (5) insensitivity of both husband and wife to the child's emotional and developmental needs; and (6) the fact that the fear of losing the child had been the stated reason for their untruthfulness and subterfuge." 99 Cal. App. 3d, at 172, 160 Cal. Rptr., at 63.

Second, the Court of Appeal confronted applicants' contention that their marital separation should not disqualify them "*a fortiori*" from adopting Sarah. According to the court, however, applicants' separation was only one factor in the Agency's decision to terminate their status as prospective adoptive parents. Other important considerations included "emotional stability of the parents, parental sensitivity to the child's developmental needs, trustworthiness of the parents and their willingness to abide by the rules, maturity of the parents, motivation to correct deficiencies, and economic security." *Id.*, at 173, 160 Cal. Rptr., at 64. Looking to the record, the appellate court concluded that all these considerations supported the Agency's decision.

Finally, the Court of Appeal rejected applicants' claim, raised for the first time in their reply brief to that court, that the Review Agent should have appointed independent counsel to represent Sarah at the administrative hearing. Overlooking the belated nature of this argument, the court found no evidence of any divergence of interest between the Agency and Sarah, and therefore no need "to further encumber the . . . placement procedure" by requiring provision of independent counsel. *Id.*, at 174, 160 Cal. Rptr., at 64.

Prior to their appeal to the Court of Appeal, applicants had been visiting Sarah twice a week at her foster home pursuant to an agreement reached with the Agency. During its consideration of applicants' case, the Court of Appeal entered an order permitting applicants to continue their visits. When that court entered its judgment, however, it specifically vacated that order, noting that applicants had "already delayed the child's placement in a proper adoptive home by several months, to the child's detriment," and that "[f]urther legal maneuvers to perpetuate a relationship initiated by their own wrongful act should not be tolerated." *Id.*, at 175, 160 Cal. Rptr., at 64. After the Supreme Court of California declined to hear applicants' appeal, the Court of Appeal denied applicants' motion to recall its mandate and to

1324

grant them continued visitation rights pending appeal or petition to this Court. It is this last order that applicants would have me stay so as to grant them the visitation rights terminated by the court below.

Applicants state that in their ultimate appeal or petition to this Court they will raise each of the three aforementioned contentions rejected by the Court of Appeal. I find it highly unlikely that four Members of this Court would vote to grant plenary review on any of these issues.

In regard to applicants' claim that they were entitled as a matter of procedural due process to preremoval notice, I would note initially that such a claim depends entirely upon their ability to show that they have been deprived of some protected interest in life, liberty, or property. As I read this Court's opinion in *Smith* v. *Organization of Foster Families,* 431 U. S. 816, 842–847 (1977), their success on this threshold issue is far from certain. See also *id.,* at 856–863 (STEWART, J., concurring in judgment). Even assuming such success, however, applicants candidly, and somewhat cryptically, pose the primary issue presented to this Court as whether authorities can dispense with preremoval notice on a finding of " 'prospective' imminent danger" to the child as opposed to "actual imminent danger." Statement of Points and Authorities 7. Like the court below, I find this distinction somewhat elusive. In any event, I am reasonably certain that, given the uniform conclusion of the agencies and courts below that there was indeed an imminent danger to Sarah, four of my colleagues would not vote to examine that conclusion.

As for applicants' contention that they were disqualified as prospective adoptive parents "merely" because they had separated, I note only that this contention finds no support in the decision of the Court of Appeal or in any of the documents filed in support of the application.

Finally, applicants reassert their contention that Sarah was entitled to independent counsel in the administrative proceeding. Absent a showing of actual conflict or other

prejudice to Sarah, however, I see little chance that this argument will receive plenary review.

Applicants argue doggedly that the equities in this case favor continuation of their visitation privileges pending disposition of their case by this Court. They rely in particular upon affidavits by various child psychologists indicating that such visits would not harm Sarah and actually would assist her in overcoming the trauma of removal from applicants' home. The Court of Appeal also was presented with these affidavits, however, and concluded on the basis of all the evidence that further visitation would not be in Sarah's best interest. In a passage I consider quite telling, that court stated:

> "The concealment of [applicants'] marital difficulties and [their] failure to report their separation suggests that the initial placement may have been sought in an effort to salvage a failing marriage. It is unfortunate when natural parents resort to such practices; to permit adoption to be used for such purpose would be a serious breach of duty on the part of the Agency." 99 Cal. App. 3d, at 173, 160 Cal. Rptr., at 64.

Removed as I am from the actual events at issue by nearly 3,000 miles and by several layers of judicial proceedings, I decline to make my own assessment of Sarah's best interests and instead defer to the amply supported conclusions of the courts below.

The application is accordingly

*Denied.*