[No. E022283. Fourth Dist., Div. Two. Aug. 10, 1999.]

Adoption of BABY GIRL B., a Minor.
CYNDIE C., Plaintiff and Appellant, v.
GERALDINE B., Defendant;
STATE DEPARTMENT OF SOCIAL SERVICES, Objector and
Respondent.

**COUNSEL**

Cyndie C., in pro. per., and John L. Dodd for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Charlton G. Holland III, Assistant Attorney General, John H. Sanders and James F. Ahern, Deputy Attorneys General, for Objector and Respondent.

**OPINION**

**RICHLI, J.**—Cyndie C. filed a petition to adopt Baby Girl B. (hereafter Baby B.). The State Department of Social Services (Department) filed a

report stating that Cyndie had failed to respond to many of the Department's requests for information, was unemployed, had a criminal record, and was living with her ex-husband and her son, who also had criminal records. The report concluded that Cyndie would not provide a suitable home for Baby B. It recommended that Cyndie's petition be denied and that Baby B. be removed from her custody. Based on the report, the trial court refused to hold an evidentiary hearing; it entered an order denying the petition and removing Baby B. from Cyndie's custody. Cyndie filed a motion to vacate the order (Code Civ. Proc., § 473, subd. (b)), but the trial court denied the motion.

Cyndie appeals, contending:

1. The trial court's denial of an evidentiary hearing violated Cyndie's right to due process of law.

2. The trial court's denial of an evidentiary hearing violated Baby B.'s rights to due process and equal protection.

3. The trial court erred by denying Cyndie's motion to vacate the order because:

a. The Department had not given Cyndie adequate notice of the grounds for and the nature of the ruling it was seeking within an adequate time before the hearing.

b. The order was entered due to Cyndie's mistake, inadvertence, or excusable neglect.

c. The Department had failed to file its report within the statutory deadline of 180 days after the filing of the petition.

Rather than decide Cyndie's contention that the trial court erred by refusing to hold an evidentiary hearing on constitutional grounds, we will hold this refusal violated her statutory right to a hearing. We will further hold the error was reversible per se; and even if not, on this record it was prejudicial. We need not reach Cyndie's other contentions.

## I

### FACTUAL AND PROCEDURAL BACKGROUND

A. *The Order Denying the Adoption Petition.*

On October 24, 1996, Geraldine B. gave birth to Baby B. Geraldine had a history of drug abuse. Baby B. went through drug withdrawal, which required her to be in intensive care for two weeks. According to the Department, when Baby B. was released from the hospital, the local county social services agency placed her in Cyndie's custody.

On March 27, 1997, Geraldine consented to adoption by entering into an adoption placement agreement. On April 7, 1997, Cyndie, acting in propria persona, filed an adoption petition. On June 26, 1997, Geraldine's consent to adoption became irrevocable.

According to the Department, Cyndie failed to file a copy of the petition with it until July 31, 1997.[1] On August 19, 1997, according to the Department, it conducted a home visit during which it interviewed Cyndie. By letter dated October 29, 1997, the Department filed its report with the court. The report recommended that the petition be denied and that Baby B. be removed from Cyndie's custody. There is no indication the report was served on Cyndie at that time.[2]

According to the report, Cyndie was unemployed. She had stated that her ex-husband was supporting her, but she had also stated that she was living off the proceeds of the sale of a piece of property. Cyndie lived with her ex-husband; her adult son and daughter also lived with her "on and off." One Beatrice K., aged 77, lived in the household. Ms. K. was a friend of another of Cyndie's ex-husbands. She had had a stroke; she stated that Cyndie "help[ed] in her daily care."

The report stated that Cyndie had been convicted of larceny, sometime before 1978; obtaining welfare aid by fraud, in 1981; writing checks on

---

[1] There is no indication in the record, however, that the clerk of the court did not "immediately notify" the Department of the petition. (See Fam. Code, § 8802, subd. (a)(2).)

[2] The Department has claimed, both below and in this appeal, the report was mailed to Cyndie at the same time as it was mailed to the court for filing. As proof, the Department cites the cover letter that accompanied the report.

The cover letter, however, merely asked the court clerk to set a hearing "as soon as possible" and to "notify the following parties of the hearing date and time." It then listed, as the parties to be notified, Cyndie, with her address, and the Department, with its addresses. There was no "cc" or other indication that the report itself had been sent to Cyndie. Even if there were, we would question whether an unsworn "cc" would be sufficient proof of service. (See Code Civ. Proc., § 1013a.)

insufficient funds, in 1982; and possession of a controlled substance, in 1996. In addition, warrants had been issued for her arrest on charges of writing checks on insufficient funds, in 1980, and grand theft, in 1985. There was no indication she had ever been convicted on the latter charges. Following her conviction for drug possession, Cyndie had successfully completed a drug diversion program. She reported that she was continuing to attend drug diversion, as well as a church-sponsored support group and counseling.

Cyndie's ex-husband had a history of arrests for "grand theft, 1986; battery, 1994; disturbing the peace, 1994; drunk in public, 1995; driving under the influence of alcohol, 1994; and three incidents of spousal abuse in 1994-1995." Cyndie admitted he had physically assaulted her four times.

Cyndie's adult son had a history of arrests for "battery, suspect in a stolen car, burglary, and a warrant of failure to appear, all dating from 1991 to 1996." According to the report, Cyndie admitted her son was an alcoholic, but she said he was attending Alcoholics Anonymous.

The Department claimed it had requested the fingerprints of Cyndie's ex-husband and of her son, but it had not received them. It claimed Cyndie had also failed to supply it with health and medical information; documentary proof of her marriages and divorces; proof of insurance; the names, addresses and telephone numbers of her personal references; and the names, addresses and telephone numbers of the counseling programs she was attending.

On November 7, 1997, the court clerk gave notice that a hearing on the petition had been set for December 10, 1997. The notice stated, "A report from the State Department of Social Services recommending denial of [the] petition for adoption has been filed with the clerk." The report itself, however, was not attached.

Under cover of a letter dated November 26, 1997, the Department sent Cyndie a copy of the report (apparently for the first time).

On December 2, 1997, the Department filed and served a memorandum of points and authorities in opposition to the adoption petition. Another copy of the report was attached to the memorandum.

On December 10, 1997, Cyndie, still in propria persona, appeared at the hearing. The trial court said:

"THE COURT: The Court is inclined to sign the order that has been proposed by the Department. Do you wish to oppose it?

"Ms. C[.]: Pardon me, sir?

"THE COURT: Do you wish to oppose the order sought by the Department?

"MR. HOLQUIST: Your Honor, if I could just make an appearance. My name's Allen Holquist. I'm not officially representing Ms. C[.], but I'm familiar with the case. We've discussed it. [¶] I believe the answer to the question is that she does want to oppose it. Is that correct?

"Ms. C[.]: Yes.

"THE COURT: Well, I'm going to require that a written response be filed and that the matter be set down for a contested hearing. [¶] How long do you anticipate it will take?

"Ms. C[.]: I'm not sure, sir. I'm doing this in pro per, and I don't know what information—I have a lot of information that [the caseworker] had requested of me."

At this point, the attorney for the Department argued: ". . . Ms. C[.] has had more than enough opportunity to be cooperative with [the caseworker], and she hasn't. . . . Now with the threat of the child being removed, she's suddenly showing up and saying she wants to be cooperative. She's had more than enough chance.

"The Department believes, and I might add I personally believe, this child is in danger the longer she stays in this household and that she should be removed immediately. . . .

"I don't think there's really much to discuss. Ms. C[.] has been served with our memorandum. She's had a copy of the report. She's had more than enough opportunity to prepare any kind of response, and I think it's just delaying a matter that should be resolved as soon as possible for the protection of this child.

"THE COURT: The Court's going to sign the order in the form presented."

The trial court entered an order denying the adoption petition and removing Baby B. from Cyndie's custody and placing her in the custody of the local county social services agency.

B. *The Order Denying the Motion to Vacate.*

On December 16, 1997, Cyndie—appearing through Attorney George Maricic—filed a motion to vacate the order under Code of Civil Procedure section 473, subdivision (b).

In a declaration in support of her motion, Cyndie testified her ex-husband and her son no longer lived with her. She admitted she was unemployed, but she confirmed she had income from the sale of property. She pointed out that her larceny conviction was over 20 years old; her welfare fraud and bad check convictions were over 10 years old; and she had successfully completed drug diversion. She was in counseling and attending a church-sponsored support group. She testified she no longer used alcohol or drugs.

Cyndie admitted she had not responded to the Department's requests for information in a timely manner. She testified, however, ". . . I have attempted to cooperate fully and honestly . . . . I was forthright with the [Department] and disclosed all relevant and necessary information."

Cyndie also testified: "Due to my mistake, inadvertence, and excusable neglect, I did not present all evidence available to me to the court for consideration." She offered to call witnesses, including a named sergeant with the sheriff's department, "who can testify to my suitability to be an adopting parent and more than adequate ability to provide a suitable home for Baby Girl B[.]"

On December 31, 1997, the trial court heard argument on the motion. On January 8, 1998, it denied the motion.

## II

### THE STATUTORY SCHEME GOVERNING INDEPENDENT ADOPTIONS

Under the Family Code, birth parents can consent to adoption by entering into an adoption placement agreement with a prospective adoptive parent. (Fam. Code, § 8801.3; see also Cal. Code Regs., tit. 22, § 35108, subd. (b).) The birth parents have 90 days in which to revoke this consent. (Fam. Code, § 8814.5, subd. (a)(1).) If they fail to do so, their consent becomes permanent and irrevocable. (Fam. Code, §§ 8801.3, subd. (c)(2), 8814.5, subds. (a)(1), (3), (b), 8815, subd. (a).)

Once the adoption placement agreement has been signed, the prospective adoptive parent may petition for adoption. (Fam. Code, § 8802, subd. (a)(1)(C).) The court clerk must give notice of the petition to the Department. (Fam. Code, § 8802, subd. (a)(2).) In addition, when the petition is filed, the petitioner must file a copy of the petition with the Department. (Fam. Code, § 8808.) The Department must "investigate the proposed independent adoption" (Fam. Code, § 8807, subd. (a)) and "ascertain whether the child is a proper subject for adoption and whether the proposed home is

suitable for the child." (Fam. Code, § 8806; see also Cal. Code Regs., tit. 22, §§ 35079, subd. (b), 35081, 35083, 35087, 35089, 35093.) It must interview the petitioners and the birth parents. (Fam. Code, § 8808; see also Cal. Code Regs., tit. 22, § 35083.) Within 180 days after the petition is filed, the Department must "submit to the court a full report of the facts disclosed by its inquiry with a recommendation regarding the granting of the petition." (Fam. Code, § 8807, subd. (a); see also Cal. Code Regs., tit. 22, §§ 35091, 35123, subd. (a).) A copy of the report must be given to the petitioner. (Fam. Code, § 8821.) Under the Department's own regulations, this must be done at the same time as the report is filed. (Cal. Code Regs., tit. 22, § 35123, subd. (g).)

If the Department finds the petitioner's home is not suitable for the child, and if it recommends that the petition be denied, the clerk must refer the report to the court "for review." (Fam. Code, § 8822, subd. (a).) The court must set a hearing on the petition and must "give reasonable notice of the hearing" to the petitioner, the birth parents, and the Department. (Fam. Code, § 8822, subd. (b).)

At the hearing, the Department is deemed to represent the child. (Fam. Code, § 8822, subd. (c).) Subject to exceptions not relevant here, the prospective adoptive parents must appear in person at the hearing. (Fam. Code, §§ 8612, 8613, 8823.) The court must "examine all persons appearing before it . . . ." (Fam. Code, § 8612, subd. (a).) If the court is satisfied that adoption will promote the interest of the child, it may enter an order of adoption. (Fam. Code, § 8612, subd. (c).) If, however, it "sustains the recommendation of the department . . . that the child be removed from the home of the petitioners because the department . . . recommends denial . . . or if the court dismisses the petition and does not return the child to the birth parents, the court shall commit the child to the care of the department . . . for the department . . . to arrange adoptive placement or to make a suitable plan." (Fam. Code, § 8805.)

III

DISCUSSION

Cyndie contends the trial court erred by refusing to hold an evidentiary hearing on her petition. We agree.

Preliminarily, Cyndie contends her interest in the care and custody of Baby B. was a constitutionally protected liberty interest. The Department argues the contrary; however, aside from boilerplate generalities, it cites no

authority to support its position. ■ Actually, it is well established that a prospective adoptive parent with whom a child has been placed for adoption has a liberty interest in continued custody. Accordingly, a prospective adoptive parent has a constitutional right to notice and "a full hearing" before the adoptive placement can be terminated, at least in the absence of urgent or emergency circumstances. (*Jinny N.* v. *Superior Court* (1987) 195 Cal.App.3d 967, 971-972 [241 Cal.Rptr. 95]; accord, *Marten* v. *Thies* (1979) 99 Cal.App.3d 161, 168-172 [160 Cal.Rptr. 57] [Fourth Dist., Div. Two], cert. den. (1980) 449 U.S. 831 [101 S.Ct. 99, 66 L.Ed.2d 36]; *C.V.C.* v. *Superior Court* (1973) 29 Cal.App.3d 909, 914-919 [106 Cal.Rptr. 123].)

Although Cyndie was entitled to due process, ". . . the question remains what process is due." (*Morrissey* v. *Brewer* (1972) 408 U.S. 471, 481 [92 S.Ct. 2593, 2600, 33 L.Ed.2d 484].) To answer this question as a constitutional matter would require us to engage in a delicate process of weighing and balancing "the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure." (*Santosky* v. *Kramer* (1982) 455 U.S. 745, 754 [102 S.Ct. 1388, 1395, 71 L.Ed.2d 599]; accord, *Lassiter* v. *Department of Social Services* (1981) 452 U.S. 18, 27 [101 S.Ct. 2153, 2159-2160, 68 L.Ed.2d 640]; *Mathews* v. *Eldridge* (1976) 424 U.S. 319, 334-335 [96 S.Ct. 893, 903, 47 L.Ed.2d 18].) Difficulty alone, of course, would not deter us. ■ However, " 'we do not reach constitutional questions unless absolutely required to do so to dispose of the matter before us.' [Citations.]" (*Santa Clara County Local Transportation Authority* v. *Guardino* (1995) 11 Cal.4th 220, 230 [45 Cal.Rptr.2d 207, 902 P.2d 225], quoting *People* v. *Williams* (1976) 16 Cal.3d 663, 667 [128 Cal.Rptr. 888, 547 P.2d 1000].)

■ We therefore begin with the narrower question of what process was *statutorily* due. It seems incontrovertible that Cyndie was statutorily entitled to an evidentiary hearing. (See, e.g., *Adoption of Schroetter* (1968) 261 Cal.App.2d 365, 366 [67 Cal.Rptr. 819]; *Adoption of Richardson* (1967) 251 Cal.App.2d 222, 228 [59 Cal.Rptr. 323].) The trial court was required to "examine all persons appearing before it pursuant to this part." (Fam. Code, § 8612, subd. (a).) It could be argued the persons required to appear at the hearing "pursuant to this part" are the prospective adoptive parents and the child. (Fam. Code, §§ 8612, 8613, 8823.) Thus, at a minimum, the trial court was required to let Cyndie testify. However, the requirement that the court examine "all persons appearing before it" cannot be construed as limited to the prospective adoptive parents.

The event that triggers the need for a hearing is the Department's filing of an adverse report. The clerk must refer the report to the court "for review."

(Fam. Code, § 8822, subd. (a).) "If the court were without power to grant an adoption without the consent of [the Department], . . . no purpose would be served by a *review* . . . ." (*Adoption of McDonald* (1954) 43 Cal.2d 447, 456 [274 P.2d 860].) "The court is to accord due weight to [the] Department's expertise in these matters, but this does not mean that [the] Department's recommendation is binding." (*San Diego County Dept. of Pub. Welfare* v. *Superior Court* (1972) 7 Cal.3d 1, 16 [101 Cal.Rptr. 541, 496 P.2d 453].)

There is no requirement that the report be sworn. Thus, the report is not equivalent to an affidavit or declaration. It seems more analogous to an initial pleading. Arguably, the report itself is admissible under the official records exception to the hearsay rule. (Evid. Code, § 1280.) Even if so, however, matters in the report that are not based on the author's personal observation may not be admissible. (See *McNary* v. *Department of Motor Vehicles* (1996) 45 Cal.App.4th 688, 693-695 [53 Cal.Rptr.2d 55].) In a juvenile dependency proceeding, specific statutes provide for the admissibility of a report by a social services agency. (Welf. & Inst. Code, §§ 281, 355, subd. (b), 358, subd. (b); *In re Cindy L.* (1997) 17 Cal.4th 15, 21-22 & fn. 3 [69 Cal.Rptr.2d 803, 947 P.2d 1340]; *In re Malinda S.* (1990) 51 Cal.3d 368, 375-382 [272 Cal.Rptr. 787, 795 P.2d 1244].) We have searched in vain for any similar statute providing that the Department's report is admissible at the hearing. Moreover, we find no provision permitting the Department to file declarations in support of its report. Thus, the Department will normally need to call witnesses to substantiate its report.

The initial adoption petition is unlikely to contain any allegations relevant to rebut an adverse report. (See Fam. Code, § 8802.) The petitioner, however, is not permitted to file any further pleading in response to the report. Just as we find no provision permitting the Department to file declarations in support of its report, we find no provision permitting the petitioner to file declarations in opposition. Thus, the petitioner, too, will normally need to call witnesses. It seems clear, then, that the Family Code contemplates a trial-like hearing, in which the decision is based on the testimony of live witnesses, rather than a motion-like procedure, in which the decision is based on declarations.

Initially, the trial court seemed to recognize Cyndie was entitled to some sort of further hearing. However, after the Department argued (1) Cyndie had had a sufficient opportunity to respond to the Department's arguments and to cooperate with its requests, and (2) Baby B. was in danger, the trial court changed its mind and denied the petition without a hearing.

We cannot agree that Cyndie had had a sufficient opportunity to respond. As already noted, the independent adoption procedures do not give the

petitioner any opportunity to file a written response to the Department's report. It could be argued this is a bad thing. The lack of a written response tends to turn the hearing into a trial by ambush. Requiring a written response could narrow the issues; in some cases, it might obviate a hearing altogether. Probably a written response could be required by statewide or local rule. We have scoured the applicable rules, however, and we find no such requirement. Here, the trial court's initial inclination to require Cyndie to file a written response seems good common sense. We need not decide whether it was also within the court's power, because the court then changed its mind and denied a hearing altogether. Cyndie had not had any previous opportunity to respond; the trial court could not deny her a hearing on the theory that she had.

The Department's claim that Cyndie had had an opportunity to comply with its requests but had failed to do so likewise does not support the trial court's denial of a hearing. The Department's report was the only indication that Cyndie had in fact failed to comply. Even assuming the report was admissible as evidence, Cyndie was entitled to an opportunity to introduce evidence that she had in fact complied; that her noncompliance was excused; or that, despite her noncompliance, adoption was nevertheless in the best interest of Baby B.

The Department's claim that Baby B. was in danger presents a closer question.[3] Nevertheless, this claim likewise does not support the trial court's denial of a hearing. Constitutionally, an imminent danger to the child may outweigh the adoptive parent's interest in a prior hearing. "An imminent danger to the child's health or safety would create an exceptional situation, elevating the public interest in summary termination above the interests of the prospective parents, justifying removal first and hearing later." (*C.V.C.* v. *Superior Court*, *supra*, 29 Cal.App.3d at p. 917.) Even in a case of imminent danger, however, the adoptive parent has a constitutional right to a posttermination hearing. (*Ibid.*; see also *Gilbert* v. *Homar* (1997) 520 U.S. 924, 930 [117 S.Ct. 1807, 1811-1812, 138 L.Ed.2d 120] ["[W]here a State must act

---

[3]We accept the Department's contention that Baby B. was in danger solely for the sake of argument. The danger, if any, was shown solely by the Department's own report. As we have already noted, the report was not necessarily admissible in evidence. Also, Cyndie had never had an opportunity to controvert the report.

Certainly the report did suggest that Cyndie might not turn out to be a suitable adoptive parent. The Department's concerns about her failure to respond to its requests for information and about the criminality prevalent in her household were sound. The only indications, however, that Baby B. was in any imminent physical, mental, or emotional danger were that Cyndie's ex-husband lived in the household and that he had a history of spousal abuse. Baby B. had been living with Cyndie and her ex-husband for 13 months, apparently without coming to any harm. Certainly the Department was not so concerned about the danger to Baby B. as to ask the trial court to set an earlier hearing.

quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause."].)

Consistent with these constitutional standards, the adoption statutes simply do not allow the trial court to dispense with a hearing, even if the child is in danger. They recognize that an independent adoptive placement may be unsuitable, and may even endanger the child, but they provide for this contingency in a different way. Normally, the Department has up to 180 days in which to investigate and file its report;[4] however, "[i]n a case where the investigation establishes that there is a serious question concerning the suitability of the petitioners or the care provided the child . . . , the report shall be filed immediately." (Fam. Code, § 8807, subd. (b); see also Cal. Code Regs., tit. 22, § 35123, subd. (b).) Thus, even if the placement appears unsuitable, the statutes contemplate a hearing; they place the onus on the Department to ensure an early hearing.

If the child is in so much danger that even swifter action is necessary, presumably the child could be removed from the custody of the prospective adoptive parent pursuant to the juvenile dependency statutes. (Welf. & Inst. Code, § 300 et seq.) Under these statutes, if the child is taken into temporary custody, a juvenile dependency petition must be filed within 48 hours (Welf. & Inst. Code, § 313, subd. (a)) and an evidentiary hearing must be held on the next judicial day after that. (Welf. & Inst. Code, §§ 315, 319.)[5] Thus, each of these statutory avenues safeguards the welfare of the child; however,

---

[4]Cyndie argues the Department failed to file its report within 180 days, as it was required to do. (Fam. Code, § 8807, subd. (a).) The Department, however, claimed this was only because Cyndie failed to give it a timely copy of the petition, as *she* was required to do. (Fam. Code, § 8808.)

Cyndie has never had an opportunity to respond to the Department's claim. Thus, we have no way of knowing who was really at fault. It seems the Department knew or should have known the petition had been filed. The clerk of the court was supposed to give notice of the petition to the Department. (Fam. Code, § 8802, subd. (a)(2).) We must presume the clerk performed this official duty. (Evid. Code, § 664.) Also, Cyndie argues the cause of the delay is legally irrelevant. Still, given the possibility that Cyndie was at fault, we would be reluctant to declare her the victor on this basis. (See Civ. Code, § 3517 ["No one can take advantage of his own wrong."].)

We believe the 180-day time limit is directory, not mandatory. (See *California Correctional Peace Officers Assn.* v. *State Personnel Bd.* (1995) 10 Cal.4th 1133, 1145-1148 [43 Cal.Rptr.2d 693, 899 P.2d 79]; *People* v. *Kirkland* (1994) 24 Cal.App.4th 891, 910 [29 Cal.Rptr.2d 863].) Thus, the mere fact that the Department missed the 180-day deadline—no matter who was at fault—did not force the trial court to grant the adoption petition.

[5]We do not mean to exclude the possibility that the trial court could use other provisional remedies to protect the child.

each also entitles the prospective adoptive parent to a pre- or post-removal hearing.[6]

We hold the trial court violated the Family Code by refusing to hold an evidentiary hearing. Even under the state law standard of prejudice (Cal. Const., art. VI, § 13), the erroneous denial of a hearing is reversible per se. (*Dvorin* v. *Appellate Dept.* (1975) 15 Cal.3d 648, 651 [125 Cal.Rptr. 771, 542 P.2d 1363]; *Kelly* v. *New West Federal Savings* (1996) 49 Cal.App.4th 659, 677 [56 Cal.Rptr.2d 803].) But even if we were to consider whether it was reasonably probable the outcome would have been more favorable to Cyndie in the absence of the erroneous denial of a hearing (see *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]), we would still find the error prejudicial. At the hearing, Cyndie offered to supply the Department with "a lot" of the information it had requested. According to her subsequent motion to vacate, she could have introduced evidence that: her ex-husband and son no longer lived with her; she was not dependent on her ex-husband for support; her criminal past was long behind her; she did not use alcohol or drugs; she was suitable to be an adoptive parent; and she was able to provide a suitable home for Baby B. Based on this offer of proof, it seems reasonably probable that allowing Cyndie an evidentiary hearing could have led to a more favorable result.[7] Certainly this is not a case in which the record not

[6]We cannot regard the hearing on the motion to vacate as an adequate substitute for the statutorily required evidentiary hearing. On the motion to vacate, the sole issue before the trial court was whether its previous order had been taken against Cyndie due to her "mistake, inadvertence, surprise, or excusable neglect." (Code Civ. Proc., § 473, subd. (b).) In opposition to the motion to vacate, the Department argued Cyndie had already been "given her day in court" and had "had an opportunity to respond." At the hearing, the trial court itself pointed out that Cyndie had been given notice of the previous hearing. Its original error in refusing to hold an evidentiary hearing would naturally lead it to the conclusion that there had been no excusable neglect. It therefore never had to consider whether, based on Cyndie's proffered evidence, adoption would promote the interest of Baby B.

[7]The Department's response to Cyndie's offer of proof is twofold.

First, it argues that, if indeed Cyndie's ex-husband and son had moved out, the "timing and circumstances . . . are remarkably fortuitous, if not downright suspicious." This argument only highlights the need for an evidentiary hearing. On one hand, Cyndie may be so devoted to Baby B. that she was willing to part with her ex-husband and her son in order to adopt her. On the other hand, if Cyndie is allowed to adopt, her ex-husband and son may move back in immediately. This is precisely the sort of factual issue which demands an evidentiary hearing so the trial court can determine it based on the testimony of live witnesses.

Second, the Department argues that, by caring for Ms. K., Cyndie was operating an unlicensed residential facility for the elderly in violation of the Residential Care Facilities for the Elderly Act (Act). (See Health & Saf. Code, §§ 1569.10, 1569.44, subds. (a), (b).) This is a pretty harsh accusation to make against someone who has taken a stricken old woman into her home and cared for her. Inasmuch as the Act expressly permits an unlicensed person to provide home care and supervision to a friend (Health & Saf. Code, § 1569.145, subd. (f)(2)), the accusation appears unfounded (at least on this record, i.e., without an evidentiary hearing). In any event, its relevance to the best interests of Baby B. seems tenuous.

only shows what evidence an appellant denied a hearing would have presented, but also conclusively demonstrates that that evidence would not have changed the result. (Cf. *Andrea L.* v. *Superior Court* (1998) 64 Cal.App.4th 1377, 1387 [75 Cal.Rptr.2d 851].) The error therefore requires reversal.

## IV

### DISPOSITION

We fear Cyndie may have won the appellate battle only to lose the adoptive war. Her appeal did not automatically stay the order removing Baby B. from her custody. (Code Civ. Proc., § 917.7.) She did not ask the trial court to stay this order pending appeal. (See *ibid.*) She did not seek speedier relief by filing a petition for extraordinary writ. (See *San Diego County Dept. of Pub. Welfare* v. *Superior Court, supra*, 7 Cal.3d at p. 9.) Nor did she seek a writ of supersedeas. (See Code Civ. Proc., § 923; *In re Bridget R.* (1996) 41 Cal.App.4th 1483, 1490, fn. 1 [49 Cal.Rptr.2d 507]; *In re Manuel J.* (1984) 150 Cal.App.3d 513, 518 [197 Cal.Rptr. 777].) Accordingly, Baby B. has been with other caregivers for over a year and a half—and a particularly critical year and a half, at that. We do not know whether Baby B. has bonded with those caregivers; however, we hope that the juvenile dependency system has been able to provide her with a stable, supportive, and loving home. If so, when at long last the trial court does hold a hearing, Cyndie will face the daunting task of convincing the trial court that adoption by her is in Baby B.'s best interests—so much so as to justify taking a two-and-a-half-year-old little girl away from her "mommy" and "daddy."

"In dealing with problems of physical custody pending the resolution of adoption litigation, the courts normally call for preservation of the status quo when it poses no threat to the child. [Citations.] . . . [T]he child's welfare remains as the paramount concern. Multiple changes of custody should be avoided. [Citation.]" (*C.V.C.* v. *Superior Court, supra*, 29 Cal.App.3d at pp. 920-921.) Although we are reversing the order removing Baby B. from Cyndie's custody, this does not compel the trial court to restore her to Cyndie's custody. (*Ibid.*; see also *In re Marriage of Russo* (1971) 21 Cal.App.3d 72, 93-94 [98 Cal.Rptr. 501].)

The order denying the adoption petition and removing Baby B. from Cyndie's custody is reversed. We leave the question of interim custody to be

decided by the trial court upon remand. Cyndie C. shall recover costs on appeal from the Department.

Hollenhorst, Acting P. J., and Ward, J., concurred.